**WEST AMERICA CORPORATION, d/b/a Trend West Furniture Manufacturing Company, Plaintiff/Counter-defendant-Appellant,**

v.

**VAUGHAN–BASSETT FURNITURE COMPANY, INC.,
Defendant/Counter-claimant-Appellee.**

Nos. 84–5815, 84–6173.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 1985.

Decided July 12, 1985.

Harry G. Melkonian, Buchalter, Nemer, Fields, Chrstie & Younger, Los Angeles, Cal., for defendant/counter-claimant-appellee.

Jack R. White, Hill, Farber & Burrill, Los Angeles, Cal., for plaintiff/counter-defendant-appellant.

Before HUG and BOOCHEVER, Circuit Judges, and GEORGE,* District Judge.

HUG, Circuit Judge:

West America Corp., d/b/a Trend West ("Trend West"), sued appellee Vaughan-Bassett Furniture Co., ("Vaughan-Bassett") seeking damages for breach of contract, breach of warranty, and for Robinson-Patman Act violations, all stemming from Vaughan-Bassett's sale to Trend West of allegedly defective furniture. Trend West also sought a declaration that it did not owe Vaughan-Bassett the amount that Vaughan-Bassett claimed was owing it on furniture sales to Trend West. Vaughan-Bassett counterclaimed for $336,-

306.18 owed on eighteen unpaid invoices and for $1,398.72 in prior balances due on shipments plus 1.5% per month late charges. The district court dismissed the Robinson-Patman claims and, by instructions, limited the jury's review of some of the issues. The jury returned a verdict in favor of Vaughan-Bassett on Trend West's claims, and a verdict of $411,053.53 on Vaughan-Bassett's counterclaim. Trend West appeals from the judgment entered on the verdict of the jury and contests the limiting instructions of the court.

Shortly before trial on this first complaint, Trend West filed a second complaint against Vaughan-Bassett in state court alleging that the sale of the questionable furniture constituted an unfair business practice. This case was removed to federal court by appellee based on diversity and was dismissed by the district judge on *res judicata* grounds after the trial on the first complaint. Trend West had opposed the removal and had sought remand arguing lack of diversity. Trend West contends in appeal No. 84–6173 that the failure to remand was error. We affirm the judgments entered by the district court.

## FACTS

Trend West, a California corporation, manufactures and distributes waterbeds and frames. Vaughan-Bassett makes case goods.[1] Trend West bought these case goods to complement its waterbeds so that it could market its beds as parts of "suites" of bedroom sets. Vaughan-Bassett packaged the case goods that it sold Trend West in boxes bearing the latter's trademark. These boxes were then sent to Trend West where they remained, unopened, until sent to various retailers.

Trend West alleged that between 1980 and 1982 the proportion of seriously defective Vaughan-Bassett case goods climbed to unacceptable levels, resulting in client

---

* The Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

1. "Case goods" are pieces of furniture, generally having drawers, used for storing items. Examples are desks and dressers. This contrasts with "softgoods," which are items such as davenports.

dissatisfaction and lost business. Trend West thereafter ceased buying from Vaughan-Bassett and refused to pay for certain furniture it had received. It then brought the instant actions.

## ANALYSIS

### I. *The Jury Verdict*

Trend West launches a two-pronged attack against the verdict of the jury. It maintains that the district judge was wrong to limit the issues before the jury. It also argues that no jury acting reasonably could have found that Trend West suffered no damages.

■ To the extent that the trial judge removed damage claims from the jury, she granted directed verdicts against the plaintiff. "A directed verdict may be granted pursuant to Fed.R.Civ.P. 50(a) when, viewing the evidence in a light most favorable to the non-moving party, the testimony and all the inferences that the jury could justifiably draw therefrom are insufficient to support any other finding." *Los Angeles Memorial Coliseum Com'n v. N.F.L.*, 726 F.2d 1381, 1387 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984) (citations omitted). "When there is no substantial evidence to support a claim, i.e., only one conclusion can be drawn, the court must direct a verdict...." *Id.* (Citations omitted.) Review is *de novo. Id.*

■ Trend West may succeed in its challenge to the jury finding of no damages "only if the verdict is against the 'great weight' of the evidence, or 'it is quite clear that the jury has reached a seriously erroneous result.'" *Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336, 1347 (9th Cir.) (quoting *Coffran v. Hitchcock Clinic,*

683 F.2d 5, 6 (1st Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982)) (citations omitted), *petition for cert. filed,* 53 U.S.L.W. 3406 (U.S. Nov. 9, 1984) (No. 84–761).

### A. *Limiting the Questions Presented the Jury*

Trend West claimed that consequential and incidental damages arose from Vaughan-Bassett's "breach of contract" (or express warranty) and "breach of warranty" (or implied warranty of merchantability)—that is, Vaughan-Bassett's sale to Trend West of allegedly defective furniture.[2] The district court instructed the jury on the breach of contract and breach of warranty issues. The court limited the scope of the jury's review, informing the jury that it should consider only those damages by Trend West on the purchase of those 263 Vaughan-Bassett pieces still in the possession of Trend West. It also removed the issue of consequential damages by telling the jury that it should arrive at a damage figure by calculating the difference at the time and place of acceptance between the value of the 263 pieces of furniture accepted and the value such furniture would have had if it had been as warranted.

### 1. *Consequential Damages*

In reviewing the portions of the record submitted by the Trend West, we find no evidence of consequential damages (lost business or goodwill). Trend West did present evidence of defective merchandise. Although two Trend West clients testified that they had experienced problems with the Vaughan-Bassett merchandise sold to

---

**2.** Trend West also sought damages under the Robinson-Patman Act and declaratory relief from Vaughan-Bassett's claim of non-payment of eighteen invoices covering case goods delivered and accepted. The district court dismissed the Robinson-Patman claims and Trend West does not appeal that decision. The declaratory relief claim was decided against Trend West when the jury found for Vaughan-Bassett on its counterclaim for the value of the case goods. Trend West had agreed before trial that it had not paid for certain case goods whose sales price equaled the amount that Vaughan-Bassett claimed. Its challenge to the failure to grant declaratory relief against Vaughan-Bassett comes in the form of the attack on the jury verdict granting Trend West no damages as an offset to the judgment awarded Vaughan-Bassett, and is discussed below in the context of whether substantial evidence supported the jury verdict.

them by Trend West, they did not comment on whether the problems had affected their relationship with Trend West.

■ Trend West sought to introduce exhibits purporting to give figures for the decline in sales of Vaughan-Bassett/Trend West suites over the period of time when the percentage of defective Vaughan-Bassett products substantially increased. But Vaughan-Bassett's counsel cross-examining Trend West's president about the exhibits to show their lack of admissibility, demonstrated that the exhibits were based on hearsay. The court, in excluding the exhibits, also pointed out that the figures were irrelevant because there was no basis for connecting the putative decline in sales to defective Vaughan-Bassett furniture.[3] The court also found problems with the lack of foundation for the calculations and with the relevance of the time period for which they were computed. Given the lack of evidence of consequential damages, the jury could not reasonably have awarded them.

### 2. Damages For Merchandise Sold

■ The court also acted correctly in limiting consideration of damages only to those items Trend West still possessed. Trend West points to nothing in the record indicating that it had sold the other Vaughan-Bassett case goods for less than full value. There was thus no basis for finding that Trend West had suffered any loss because of defects in the Vaughan-Bassett goods it had sold.

### B. Substantial Evidence

Trend West contends that no reasonable jury could have found that it did not suffer damages from defects in the 263 pieces of Vaughan-Bassett furniture it retains on hand. Trend West produced some defective Vaughan-Bassett furniture as evidence

during the course of the trial and witnesses from both sides agreed that there were some defects. The magnitude of the defects and the effect on merchantability was in dispute. There was credible evidence that there was an industry practice that had governed the relationship between Vaughan-Bassett and Trend West, whereby adjustments were made for damaged or defective merchandise either by credits or repairs. Vaughan-Bassett represented that it had always stood by this practice and if adjustments had not been made for these pieces, they would be made in the ordinary course of business.[4]

■ A reasonable jury could have found that Trend West already had been compensated fully for the diminished value of the invoiced goods by the credits Vaughan-Bassett had given it on those goods or, at least, that all complaints by Trend West had been met by Vaughan-Bassett offers either to compensate for repair or give credits, and that Vaughan-Bassett would continue to respond adequately to any future complaints. The jury's decision not to grant a set-off neither goes against the great weight of the evidence nor does it reach a seriously erroneous result.

### II. Diversity Jurisdiction

In appeal No. 84–6173, Trend West argues that, because diversity was absent, removal of the state court suit was improper and the federal district court lacked jurisdiction to grant summary judgment to Vaughan-Bassett. Trend West contends that the inclusion of California resident "Doe" defendants in its complaint defeats diversity (since plaintiff Trend West is a California corporation). Vaughan-Bassett opposed remand to the state court on the ground that the Doe defendants were mere sham.

---

3. The Trend West president also testified on cross-examination that Trend West customers had told him that they were cutting back their floor space devoted to Trend West products, or were no longer going to buy from Trend West, because of the Vaughan-Bassett defective case goods. This testimony was properly stricken, however, because it was hearsay.

4. At oral argument, Vaughan-Bassett reiterated its continued acceptance of this obligation to Trend West.

In *Hartwell Corp. v. Boeing Co.,* 678 F.2d 842, 843 (9th Cir.1982), this court found pleaded "Does" to be a sham and said:

> Of course, Doe pleading by its very nature cannot provide the highest level of specificity. But the defendant and the court must be given some basis for believing the Doe pleading is not a mere sham. Thus, ... a plaintiff cannot defeat diversity merely by inserting an unidentified Doe into a complaint without giving us some clue who the Doe might be, how the Doe might fit into the charging allegations, or how the Doe might relate to other parties.

In their briefs, both parties focus on this language from *Hartwell* and debate whether the Trend West complaint is sufficiently specific to pass the "sham" test and defeat diversity.[5] Our reading of the complaint reveals no real indication of what any of the Doe defendants may have done to establish a claim against them. The evidence in the trial record further establishes no claim against any Doe defendant. In a recent case we stated:

> We refuse, however, to make a broad holding that attempts to clarify the vague contours of when Doe pleading is specific enough to defeat diversity in a case where the uncontradicted evidence in the record indicates that there is complete diversity of citizenship.

*Pelleport Investors v. Budco Quality Theatres,* 741 F.2d 273, 279 n. 2 (9th Cir.1984).

▮▮▮ *Pelleport* is also instructive here for the reason that we dismissed as sham the Doe defendants in the complaint under scrutiny primarily based on defendant's filing of:

> an uncontested affidavit in district court listing the names of the companies it believes are the Doe defendants. None of those companies is a citizen of either California, the state in which the suit was brought, or New York, the state of which Pelleport is a citizen. Hence, the record indicates that there is complete diversity between the plaintiff and defendants.

741 F.2d at 279 (footnote omitted). As in *Pelleport,* the sole named defendant in this case submitted an affidavit listing the only persons who could be the Doe defendants and showing that the charging allegations against "Does" could only be a sham. The affidavit of the Vaughan-Bassett president listed all its "California principals or agents" and noted that each was an independent salesperson who represented Vaughan-Bassett and other manufacturers. It affirmed that none of the individuals was involved in the manufacture, shipping, or pricing of Vaughan-Bassett goods (the complaint's allegations concern unfair pricing and intentional furnishing of defective goods). Like the plaintiff in *Pelleport,* Trend West does not controvert the substance of the affidavit.[6] In light of this

---

**5.** Vaughan-Bassett points to the vagueness of the charging allegation ("said [Doe] defendants, some of which are residents of the State of California, were and are either the agents or the principals of the defendant named herein and, in such capacity or capacities participated in the acts and conduct, and are liable for plaintiff's damages, as herein alleged"). It also notes that the complaint talks only of the "defendant" not "defendants," except in one instance. Trend West cites that instance: "Plaintiff is informed and believes, and therefor alleges, that defendant intentionally furnished defective furniture to plaintiff whereas defendant Vaughan-Bassett undertook not to supply said defective furniture to Vaughan-Bassett's distributors and retail customers—some of whom are Doe defendants." Vaughan-Bassett notes that no complaint is made against these Doe defendants on the basis of their passive receipt of non-defective goods.

**6.** Trend West contends that because Vaughan-Bassett did not argue sham or submit a supporting affidavit when it removed the case to federal court, it lost the ability to pursue such an attack in fending off the Trend West bid for remand to state court. Arguably, Vaughan-Bassett's removal papers were defective in not addressing the Doe issue, but Trend West cites no authority for the proposition that the district court acted improperly in entertaining the affidavit and sham argument in considering the distinct Trend West motion to remand. Even if the removal were defective, the district court had jurisdiction to entertain all arguments on the motion to remand concerning its jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946).

lack of response to a sworn affidavit, it is unimportant that the Vaughan-Bassett affidavit addressed issues, such as individuals' roles, more likely to be the subject of a *bona fide* dispute than those addressed in the *Pelleport* affidavit (that is, the citizenship of various persons). The court did not err in dismissing the Does as sham and finding that diversity jurisdiction therefore existed.

## CONCLUSION

The judgments of the district court are affirmed. Vaughan-Bassett's request for sanctions are denied, however, since neither of Trend West's appeals is frivolous.

AFFIRMED.