Tyrone MERRITT, Plaintiff–Appellant,

v.

COUNTY OF LOS ANGELES,
Defendant–Appellee.

No. 87–6173.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1989.

Decided May 24, 1989.

Edward M. Fox, Los Angeles, Cal., for plaintiff-appellant.

Laurence J. Rubinow, Los Angeles, Cal., for defendant-appellee.

Before SCHROEDER, FLETCHER and TROTT, Circuit Judges.

TROTT, Circuit Judge:

In this 42 U.S.C. § 1983 action, Tyrone Merritt alleged that he was subjected to excessive force and an unlawful arrest for

grand theft auto. He appeals from the district court's order granting a judgment notwithstanding the verdict in favor of the defendant County of Los Angeles, and from the conditional granting of a new trial based upon an allegedly faulty jury instruction. He further contends that the district court erred in denying several pretrial motions seeking to amend his complaint to substitute the actual names of the law enforcement officers who were involved in his arrest for the fictitiously named Doe defendants. We affirm in part, and vacate and remand in part.

# I

## BACKGROUND

At all times relevant to this action, Tyrone Merritt was the proud, if unfortunate, owner of a 1983 Spartan automobile, which he had purchased from Ronald Sparks. The Spartan is "a mid–30s looking automobile" manufactured by Sparks by altering a new Nissan. Most significantly, because of the way this unique car is manufactured, it displays two different Vehicle Identification Numbers ("VIN"). During the process of creating a Spartan from a Nissan, Sparks would lawfully remove the VIN from the dashboard and replace it with a new number. This new VIN would no longer match the number engraved on the firewall beneath the hood. This anomaly is perfectly legal, so long as the automobile is properly registered. Testimony at trial revealed that the VIN is considered to be the "all important number on a car," and is used extensively in automobile theft investigations.

With this background in mind, we now turn to the events that transpired on the night of December 14, 1984, which gave rise to this action. On that night, Merritt was seated in his Spartan automobile, which was parked on Sunset Boulevard in West Hollywood. The car had no license plates, and although Merritt was in possession of a temporary registration for the vehicle, it was not displayed in the front window as required by California law.

Having observed Merritt's "unusual" automobile and noting the absence of license plates, sheriff's deputies for the County of Los Angeles stopped to investigate a possible vehicle code violation. As would be expected, one of the deputies eventually opened the engine compartment to crosscheck the VIN on the firewall against the VIN displayed on the dashboard and discovered that they did not correspond. After searching Merritt's car and finding no registration form, the deputies arrested Merritt on suspicion of grand theft auto. Merritt claimed that during the course of the investigation he was repeatedly punched in the ribs, had his facial hair and sideburns pulled, and was struck on the hand with a flashlight. Merritt was released from custody the following morning after his temporary registration was located in the glove compartment of his vehicle and his ownership of the Spartan had been established by a telephone call to Sparks.

On May 15, 1985, Merritt filed this action alleging violation of his civil rights under 42 U.S.C. § 1983, naming as defendants Los Angeles County and "Does I through X, Inclusive." In his complaint, he alleged that Does I and II were employed as sheriffs by defendant County and that Does III through X were "responsible in some manner for the events herein referred to, and caused injuries and damages proximately thereby to plaintiff as herein alleged." He asserted that the names of the individual Doe defendants were at that time unknown, and that he would "insert the true names and capacities of the fictitiously named defendants when ascertained."

In response to interrogatories served on defendant County on February 27, 1986, Merritt acquired the actual names of four of the individual officers who were involved in his arrest. Accordingly, on April 18, 1986, Merritt filed a motion to amend his complaint under Fed.R.Civ.P. 15(a) to substitute their names for those of the fictitiously named Doe defendants. It was undisputed that the statute of limitations period expired prior to Merritt's motion to

amend.[1] He argued, however, that the statute of limitations did not bar his claim because the amendment adding the individual defendants related back to the timely filing of his original complaint pursuant to Fed.R.Civ.P. 15(c).[2]

After a hearing, the district court denied appellant's motion and determined that naming of the individual defendants would not "relate back" to the filing of the original complaint, since there had been no showing that the individual defendants had received actual notice of the institution of the action within the prescribed limitations period as required by Rule 15(c).

Merritt subsequently moved the district court, on June 23, 1986, to reconsider its prior ruling. He argued, *inter alia*, that the individual defendants shared a sufficient "community of interest" with that of their employer, defendant County, such that Rule 15(c) notice could be imputed to them. The district court, however, determined that the individual defendants had received no notice, either formal or informal, and denied the motion.

Maintaining his perseverance, Merritt filed yet another motion to amend on August 25, 1986, arguing this time that the statute of limitations period was tolled by virtue of the California Doe pleading statutes. The district court scheduled a hearing date on the motion for September 22, 1986. By the court's own motion, the hearing date was continued to September 29, 1986, eight days before trial was to commence. The merits of the renewed motion to amend were never addressed by the district court and the motion was denied due to its proximity to the trial date.[3]

Thus, the only claim which proceeded to trial on October 7, 1986, was Merritt's section 1983 claim against defendant County, predicated on his contention that the County had deprived him of his constitutional rights by adopting a custom or policy of maintaining an inadequately trained sheriff's department.

The jury returned a verdict in favor of Merritt and against the County for $30,000. The County, having sought a directed verdict during trial, brought a motion for judgment notwithstanding the verdict ("JNOV"), or in the alternative a new trial. On June 26, 1987, the district court granted the JNOV, and, should the JNOV be "deemed improper," a conditional new trial on the basis of what it perceived to be an erroneous instruction submitted to the jury. Merritt timely appeals and we have jurisdiction pursuant to 28 U.S.C. § 1291.

**1.** The applicable statute of limitations for § 1983 actions in California was changed from three years, Cal.Civ.Proc.Code § 338(1); *Venegas v. Wagner,* 704 F.2d 1144, 1145 (9th Cir. 1983), to one year, Cal.Civ.Proc.Code § 340(3), when on April 17, 1985, the Supreme Court handed down its decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

In *Usher v. City of Los Angeles,* 828 F.2d 556 (9th Cir.1987), we addressed the retroactive effect of *Wilson* and held that "the limitation period for causes of action arising prior to *Wilson* shall be either (1) the pre-*Wilson* period, commencing at the time the cause of action arises, or (2) the post-*Wilson* period, commencing with the [date of the] *Wilson* decision, whichever expires first." *Id.* at 561. In this case, the latter occurred first and Merritt's motion to amend was filed one day beyond the applicable limitations period.

**2.** Rule 15(c) (Relation Back of Amendments) provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if ... that party (1) has received such notice of the institution of the action ... and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

**3.** In its Memorandum of Decision and Order filed October 10, 1986, the district court stated:

Plaintiff's renewed request to amend was filed August 25, and noticed for hearing on September 22, 1986, fifteen days before trial is to commence. The prejudice facing the new defendants plaintiff seeks to join is even greater today than it was four months ago. Therefore, regardless of whether amendment is foreclosed by Rule 15(c) or whether running of the statute was tolled by virtue of California Doe pleading statutes, ... declining to permit amendment is nevertheless proper under Fed.R.Civ.P. 15(a).

Clerk's Record (CR) 83 at 3.

## II

## DISCUSSION

### A. Motion to Amend

#### 1. Standard of Review

■■■ We review for abuse of discretion a district court's decision whether to allow an amendment to add a new defendant or to substitute a defendant for one named in the original pleading. *Percy v. San Francisco General Hospital*, 841 F.2d 975, 978 (9th Cir.1988). A ruling on the appropriate application of a state statute of limitations, however, is a question of law reviewable *de novo. Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1462 (9th Cir.1988).

#### 2. Discussion

■■ Merritt argued below that notice of the institution of his lawsuit against the County should have been imputed to the individual defendants, such that an amendment substituting the names of the individual defendants would relate back to the timely filing of his original complaint under Fed.R.Civ.P. 15(c).[4] Alternatively, Merritt argued in his third request for leave to amend that, notwithstanding the notice provisions of Rule 15(c), the statute of limita-

tions period was tolled by virtue of California Doe pleading rules.

Our recent decision in *Cabrales, supra,* is dispositive of this issue. In *Cabrales,* we affirmed the district court's holding that the relation back provisions of state law, rather than Rule 15(c), govern a federal cause of action pursuant to 42 U.S.C. § 1983.[5] We reached this determination despite the fact that substitution of the additional defendants would have violated the notice requirements of the federal rule. Under California relation back rules, there is no notice-to-defendants requirement as in the federal rule.[6] *Cabrales,* 864 F.2d at 1463; *Smeltzley v. Nicholson Mfg. Co.,* 18 Cal.3d 932, 136 Cal.Rptr. 269, 274, 559 P.2d 624, 627 (1977).

The district court thus relied upon an improper basis for denying Merritt's motion for leave to amend.[7] We therefore vacate and remand the case to the district court to apply the California rules.

### B. JNOV

#### 1. Standard of Review

We review the district court's grant of JNOV by applying the same standard used

4. As explained by the Supreme Court in *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), relation back under Rule 15(c) requires, among other things, that the parties to be added receive notice of the lawsuit within the applicable limitations period. *Id.* at 29, 106 S.Ct. at 2384. All four of the individual defendants submitted affidavits at the hearing on Merritt's first motion to amend stating that they had no knowledge of the pending lawsuit until they were instructed to meet with County attorneys upon the filing of the motion to amend. The district court specifically found that there was "no evidence indicating that any of the four defendants had notice of the institution of this action before the filing of the motion for leave to amend." CR 40 at 6.

5. In *Cabrales,* we agreed with the district court that California relation back provisions constitute a substantive state policy that is applicable in federal civil rights actions in which a state statute of limitations governs. *Id.* at 1464. *See Wilson v. Garcia,* 471 U.S. at 269, 105 S.Ct. at 1943 ("the length of the limitations period, and closely related questions of *tolling and application,* are to be governed by state law") (emphasis added) (footnote omitted).

6. Cal.Civ.Proc.Code § 474 (Defendant designated by fictitious name; amendment) provides:

When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint ... and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly....

The district court inappropriately held § 474 inapplicable "[b]ecause this is not a diversity action." CR 40 at 5.

7. On appeal, appellee argues that the district court had independent authority under Fed.R. Civ.P. 15(a) to deny the motion to amend. We do not agree. The first two motions in which amendments to the complaint were sought were expressly and unequivocally denied, many months prior to trial, on the basis that the individual defendants did not have notice, imputed or otherwise, of the institution of the action for purposes of the relation back provisions of Rule 15(c). We therefore find the district court's ostensible reliance, shortly before trial, on Rule 15(a) in denying Merritt's third and final attempt to amend his complaint to have been inappropriate.

by the district court. *The Jeanery, Inc. v. James Jeans, Inc.,* 849 F.2d 1148, 1151 (9th Cir.1988). Without weighing the evidence or accounting for the credibility of the witnesses, we will uphold a JNOV if " 'we find that the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion —that the moving party is entitled to judgment notwithstanding the adverse verdict.' " *Id.* (quoting *Wilcox v. First Interstate Bank,* 815 F.2d 522, 525 (9th Cir.1987) (citation omitted)).

2. Discussion

It was Merritt's contention at trial that defendant County's policies or customs were implicated by the conduct of the officers involved in his arrest on December 14, 1984. Specifically, he argued that the County had a policy or custom that encompassed (1) the inadequate training of officers with respect to conducting grand theft auto investigations, and (2) the inadequate training of officers with respect to the use of excessive force.

In granting County's motion for JNOV, the district court determined that Merritt had presented "no substantial evidence of whether the training or methods of investigation were inadequate." CR 112 at 6. Further, the district court ruled that, even assuming the County's training program was inadequate, "plaintiff's proof amounted to no more than negligence in training deputies and investigating incidents such as the one in which he was involved." *Id.* at 6–7. Finally, the district court determined that there was no evidence in which a jury could reasonably find that inadequate training caused Merritt's constitutional injuries. *Id.* at 7–8.

In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), the Supreme Court held that liability under 42 U.S.C. § 1983 may be imposed on local governments only when their official policies or customs cause their employees to violate another's constitutional rights. We have in the past held that a practice of inadequate training constitutes a policy giving rise to section 1983 liability and that, in order to prevail, the plaintiff must not only establish gross negligence in training but also must demonstrate an affirmative causal link between the inadequate training and the constitutional deprivation. *Gobel v. Maricopa County,* 867 F.2d 1201, 1209 (9th Cir.1989); *Bergquist v. County of Cochise,* 806 F.2d 1364, 1369–70 (9th Cir.1986).

The requisite degree of fault, however, that we established in our prior cases has recently been rejected by the Supreme Court. The Court held, in *City of Canton v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), that a higher standard than gross negligence is required before a municipality may be held liable under section 1983 for omissions in its training practices.

In *Harris,* the plaintiff brought a section 1983 claim against the City of Canton for failure to provide her with necessary medical care while temporarily in police custody. She based municipal liability for the deprivation of medical care, in part, on a theory of inadequate training by the City of its police officers, which proximately caused the deprivation. Testimony at trial suggested that the City failed to provide any special training to its police officers to enable them to make a determination as to when to summon medical care for an injured detainee. The jury returned a verdict in favor of plaintiff and awarded her $200,000. The district court subsequently denied the City's motion for judgment notwithstanding the verdict and explained the theory of liability as follows:

The evidence construed in a manner most favorable to Mrs. Harris could be found by a jury to demonstrate that ... the vesting of such *carte blanche* authority with the police supervisor without adequate training to recognize when medical treatment is needed was grossly negligent or so reckless that future police misconduct was almost inevitable or substantially certain to result.

—— U.S. ——, 109 S.Ct. at 1201 (citation omitted).

On appeal, the Sixth Circuit in an unpublished memorandum upheld plaintiff's "failure to train" claim, holding that "a municipality is liable for failure to train its police force, [where] the plaintiff ... prove[s] that the municipality acted recklessly, intentionally, or with gross negligence." *Id.* (citation and footnote omitted). In addition, the Sixth Circuit stated that the plaintiff must prove "that the lack of training was so reckless or grossly negligent that deprivations of persons' constitutional rights were substantially certain to result." *Id.* (citation omitted). While finding no error in submitting the "failure to train" claim to the jury, however, the Sixth Circuit reversed and remanded the case for a new trial on the basis that certain instructions might have led the jury to find the City liable under the doctrine of *respondeat superior. Id.* at ——, 109 S.Ct. at 1201.

On grant of the City's writ of certiorari, the Supreme Court vacated the judgment and remanded the case. In rejecting the "overly broad rule" enunciated by the Sixth Circuit, the Supreme Court, in essence, established a three-part test with respect to when the inadequacy of police training may serve as the basis for municipal liability under section 1983. First, it must be determined whether the existing training program is adequate. The adequacy of a particular training program must be resolved "in relation to the tasks the particular officers must perform." *Id.* at ——, 109 S.Ct. at 1206. A training program will be deemed adequate if it "enable[s] officers to respond properly to the usual and recurring situations with which they must deal." *Id.*

Second, if the training program is deemed inadequate, it may justifiably be said to constitute a city policy. Such will be the case, however, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at ——, 109 S.Ct. at 1205 (footnote omitted). This heightened degree of culpability on the party of a municipality may be established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitu-

tional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (footnote omitted).

Finally, inadequate training that manifests a deliberate indifference on the part of a municipality must be shown to have "actually caused" the constitutional deprivation at issue. *Id.* at ——, 109 S.Ct. at 1207.

■ Thus, the issue before us is whether sufficient evidence was presented at trial from which a reasonable jury could have found (1) an inadequate training program, (2) deliberate indifference on the part of the County in adequately training its law enforcement officers, and (3) whether the inadequate training "actually caused" a deprivation of Merritt's constitutional rights.

■ Merritt's claim of inadequate training with respect to the use of excessive force fails. Merritt did not present any evidence indicating that the sheriff's department's training program regarding the use of force was in any way inadequate. To the contrary, evidence presented at trial clearly and unequivocally established that the training was extensive and comprehensive. Each prospective deputy is given, prior to his academy training, a two-day training session regarding the department's policies on the use of force. Twenty percent of the academy training, which may last from four to six months, addresses the use of force. Some ten percent of specialized post-academy training continues the deputy's education regarding use of force. Indeed, the only evidence presented by Merritt on this issue was the manner in which he himself was arrested. Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985); *see also Harris,* —— U.S. at ——, 109 S.Ct. at 1206 ("adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable").

Accordingly, the evidence presented at trial was inadequate as a matter of law, and there was no error in granting the JNOV with respect to this theory.

▇ Merritt's claim of inadequate training with respect to automobile theft investigations requires further analysis. Evidence was presented at trial indicating that the training was deficient insofar as the role that multiple VINs would play in an investigation involving grand theft auto.[8] The district court, nonetheless, viewed this deficiency in the officers' training as "amount[ing] to no more than negligence" on the part of the County. CR 112 at 6–7.

To be sure, this case involves an omission with respect to the training of law enforcement officers in the investigation of grand theft auto. The issue, however, is whether this omission warrants a finding that the training practices employed by the County were inadequate. It would appear that in the vast majority of cases involving automobile theft investigation that the existence of noncorresponding VINs on the same vehicle would play an important role in determining whether probable cause for arrest is present. In this case, however, the officers were confronted with the very rare situation in which the existence of conflicting VINs on an "exotic car" should *not* have played as prominent a role in determining probable cause for arrest as it would otherwise.[9]

In light of the rarity of such an occurrence, this particular deficiency in the officers' training is certainly not one of the "usual and recurring situations with which [the officers] must deal." *Harris*, —— U.S. at ——, 109 S.Ct. at 1206. As such, we are unable to say that the training in this regard was inadequate. In any event, even assuming inadequate training and a sufficient causal relationship between it and Merritt's injury, there is simply no evidence from which a jury could reasonably infer that this deficiency amounted to "deliberate indifference" on the part of the County.[10] The district court's grant of JNOV with respect to this theory was therefore proper.[11]

## III

## CONCLUSION

In light of our determination that Merritt failed entirely to present sufficient evidence from which the jury could infer the

---

**8.** Sergeant Gerald Fay, the County's expert on automobile theft investigations, testified that the "[v]ehicle identification number is the all important number on a car." Officer Kevin Blake, who participated in the investigation and arrest of Merritt, testified that he was trained that a vehicle "cannot have two different legal VIN numbers...." Officer Robert Schram, who also participated in the investigation and arrest of Merritt, testified that differing VINs are something that an officer would "key on" in an investigation of grand theft auto. Officer Schram also testified that had he known, in the field, other information which would indicate that the car belonged to Merritt, he would, nevertheless, have disregarded it because of the existence of the two VINs.

**9.** Sergeant Lay's uncontroverted testimony established that it was possible for a legally registered vehicle to have differing VINs, but that it would be a "very infrequent" occurrence.

**10.** Merritt directs us to the trial testimony of Officer James Campbell to the effect that conflicting VINs on custom made vehicles frequently result in the false arrest of their owners. Merritt, however, presented no evidence of pri-

or incidents of this character or that County policymakers were otherwise aware of the situation such that the County could "reasonably be said to have been deliberately indifferent to the need [for further training]." *Harris*, —— U.S. at ——, 109 S.Ct. at 1204 (footnote omitted).

In any event, while the need for further training with regard to the role that conflicting VINs should play in a grand theft auto investigation involving "exotic" vehicles may not have been obvious prior to the outset of this case, we note that, due to the pendency of this action, the County is on notice that its training practices should be enhanced in this minor respect in order to alleviate the occurrence of such future mishaps. *See Harris, id.* at ——, 109 S.Ct. at 1208 ("where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission [in training] is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied") (O'Connor, J., concurring in part and dissenting in part).

**11.** Because we affirm the grant of JNOV in favor of defendant County, we need not address the propriety of the district court's grant of a conditional new trial.

existence of an actionable County policy, we hold that no reasonable person could find that such a policy motivated the actions of the arresting officers. We therefore affirm the grant of JNOV in favor of defendant County. Because the district court relied upon an improper basis for denying the motion for leave to amend the complaint, we vacate and remand to the district court for reconsideration of the motion.

AFFIRMED IN PART, VACATED and REMANDED IN PART.