Karen BROWN and Jay
Brown, Plaintiffs,

v.

Douglas G. GIBB, City and County of
Honolulu, Karl Godsey, Edwin Higa,
and John Does 3–50, Defendants.

Civ. No. 88–00055 HMF.

United States District Court,
D. Hawaii.

Aug. 25, 1989.

Eric A. Seitz, Honolulu, Hawaii, for plaintiffs.

Richard D. Wurdeman, Ted H.S. Hong, Deputy Corp. Counsel, City & County of Honolulu, Honolulu, Hawaii, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR DIRECTED VERDICT, AND DENYING PLAINTIFFS' CROSS MOTION FOR DIRECTED VERDICT

FONG, Chief Judge.

### BACKGROUND

As stated in its previous order of August 21, 1989, plaintiffs' case arises out of a search and arrest warrant that concededly was wrongly executed on their home by the Honolulu Police Department ("HPD") on July 2, 1987. The HPD executed the warrants on plaintiffs' home in the mistaken belief that the home belonged to Edward Rothman ("Rothman"), who was then suspected of trafficking in narcotics. Plaintiffs are neighbors of Rothman, whose house was searched subsequent to the incident. In response to actions taken by HPD officers, plaintiffs filed the instant 42 U.S.C. § 1983 action. The parties then filed cross-motions for partial summary judgment as to various issues of liability and damages, which motions were granted in part and denied in part. At that time, this court dismissed all claims against the individual police officers, but allowed the suit against the City and County of Honolulu (the "municipality") to proceed to trial.

A jury trial was then held in this court on August 22, 23, and 24, 1989. At the close of plaintiffs' case in chief, defendant moved for a directed verdict pursuant to Fed.R. Civ.P. 50(a). The court denied the municipality's motion at that time without prejudice. Defendant again raised its motion at the close of its case, relying primarily on the Supreme Court's recent decision in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Plaintiffs orally lodged their own cross motion for a directed verdict at that time, and both sides were given an opportunity to allocute. Finding that the facts adduced at trial permit only one proper result under the rigid standard established in the *City of Canton, Ohio* case, this court now grants defendant's motion and denies plaintiffs' cross motion, thereby rendering judgment in the municipality's favor.

### DISCUSSION

#### I. STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 50(a):

A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

*Id.* Directed verdicts are proper when, "viewing the evidence in a light most favorable to the nonmoving party, the testimony and all the inferences that the jury could *justifiably* draw therefrom are insufficient to support any other finding." *Los Angeles Memorial Coliseum Commission v. N.F.L.*, 726 F.2d 1381, 1387 (9th Cir.1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984) (emphasis added). *See also Miller v. Fairchild Industries, Inc.*, 876 F.2d 718, 723 (9th Cir.1989); *Poling v. Morgan*, 829 F.2d 882, 887 (9th Cir.1987); *West America Corp. v. Vaughan–Bassett Furniture Co., Inc.*, 765 F.2d 932, 934 (9th Cir.1985). "When there is no substantial evidence to support a claim, i.e., only one conclusion can be drawn, the court *must* direct a verdict." *Los Angeles Memorial Coliseum Commission* at 1387 (emphasis added). *See also Miller* at 723; *West America Corp.* at 934.

#### II. THE MERITS

■ Following this court's summary judgment order, only one issue remained

for trial—municipal liability under § 1983. In its August 21, 1989, summary judgment order, this court discussed the relevant parameters of that issue. Pursuant to 42 U.S.C. § 1983, municipalities, such as the City and County of Honolulu, may be held liable for the constitutional violations of their police officers *only if* the violation resulted from a municipal "policy or custom." *See Merritt v. County of Los Angeles*, 875 F.2d 765, 769 (9th Cir.1989), *citing Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Because the municipality did not dispute the fact that a constitutional violation had occurred in this case, plaintiffs' case in chief was devoted to proving the existence of an unconstitutional "custom or policy" for which defendant could be held liable. Plaintiffs attempted to satisfy their burden by relying on "failure to train" theories—i.e., HPD officers had received insufficient training in the supervision and execution of warrants.

In order to succeed under such theories in the § 1983 context, plaintiffs' evidence must address the following three factors:

> *First, it must be determined whether the existing training program is adequate.* The adequacy of a particular training program must be resolved "in relation to the tasks the particular officers must perform." A training program will be deemed adequate if it "enables officers to respond properly to the usual and recurring situations with which they must deal."

> *Second, if the training program is deemed inadequate, it may justifiably be said to constitute a city policy.* Such will be the case, however, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." This heightened degree of culpability on the party [sic] of a municipality may be established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city

can reasonably be said to have been deliberately indifferent to the need."

> *Finally, inadequate training* that manifests deliberate indifference on the part of a municipality *must be shown to have "actually caused" the constitutional deprivation at issue.*

*Merritt* at 770, *quoting City of Canton, Ohio*, 109 S.Ct. at 1205–07 (emphasis added). Only if all three factors are proven, can a municipality's training program be actionable under § 1983. The *City of Canton, Ohio* case expressly raised the standard of "gross negligence" previously used by the Ninth Circuit Court of Appeals to one of "deliberate indifference." *Merritt* at 769.

█ Relying on these relevant factors, defendant moved for a directed verdict at the close of plaintiffs' case in chief. The court denied defendant's motion at that time, finding that questions remained as to the issue of deliberate indifference. Defendant, however, renewed its motion at the close of its own case in chief, and plaintiffs themselves orally moved for a directed verdict in their favor at that time. The court then informed the parties that it was leaning in defendant's favor on the cross motions, and the parties were given an opportunity to allocute on the "custom or policy" issue. After defendant addressed the court, plaintiffs raised several arguments in an attempt to persuade the court to grant a directed verdict in their favor. At no time did the plaintiffs indicate that they would be presenting a rebuttal case. Rather, plaintiffs stressed the quantum of evidence adduced in their case in chief in relation to the relevant "deliberate indifference" standard. The court then orally granted defendant's directed verdict and denied plaintiffs' cross motion. Thereafter, plaintiffs noted, for the first time, that they had not been given an opportunity to present a rebuttal case; the court rejected this untimely argument.

By orally moving for a directed verdict in their favor as to the "custom or policy" issue, plaintiffs acknowledged that their case was closed and ripe for judgment. Plaintiffs, by that time, had exhausted all

names and relevant documents identified on their witness and exhibit lists. Moreover, when addressing the court on the merits of the pending cross motions, plaintiffs failed to indicate *any* intention on their part to raise a rebuttal case—this being so, even though the court had expressly apprised the parties beforehand as to the apparent insufficiency of plaintiffs' evidence in relation to the instant *City of Canton, Ohio* context. Directed verdict was proper at the close of defendant's case in chief, therefore, because plaintiffs had been properly placed on notice of evidentiary deficiencies—deficiencies that went to the heart of their "custom or policy" case. *See Lifshitz v. Walter Drake & Sons, Inc.,* 806 F.2d 1426, 1429 (9th Cir.1986). In effect, plaintiffs had waived any right they may have had to offer a rebuttal case prior to the court rendering its decision. *Cf. Farley Transportation Co., Inc. v. Santa Fe Trail Transportation Co.,* 786 F.2d 1342, 1346–47 (9th Cir.1985) (discusses the issue of waiver in the Fed.R.Civ.P. 50 context).

▮ The court bases its decision, in large part, on its juxtaposition of uncontested facts adduced at trial with the legal standards set forth in the *City of Canton, Ohio* case. Specifically, the uncontested evidence shows, *and plaintiffs concede,* that the mistaken execution of warrants in this case represents a single isolated incident. Officer Karl Godsey ("Godsey"), who supervised the erroneous execution here at issue, testified that such mistakes had never happened before or since the July 2, 1987 incident, despite the fact that he had been personally involved in over 100 warrant executions. Godsey, who testified at first in plaintiffs' case in chief and then as a witness for the defense, also testified that he had previously supervised over 20 warrant executions without incident. Officers Theodore Julian ("Julian"), Edwin Higa ("Higa"), and Dennis Naganuma ("Naganuma") similarly testified to the fact that the instant mistake represents an isolated occurrence. Julian has participated in over 100 warrant executions without incident; Higa has been involved in approximately 60 proper executions; and

Naganuma has participated in approximately 40 such error-free executions. Given these facts conceded by plaintiffs at trial, the court finds that the municipality cannot be said to have been on notice of any deficiencies in its training of police officers in the execution of warrants. Municipal liability, therefore, cannot attach as a matter of law. "Only where a failure to train reflects a *'deliberate'* or *'conscious'* choice by the municipality … can a city be liable for such a failure under § 1983." *City of Canton, Ohio,* 109 S.Ct. at 1205 (emphasis added).

The Ninth Circuit Court of Appeals, in interpreting the *City of Canton, Ohio* case, has noted that "[m]ere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the [municipality]." *Merritt* at 770. To hold otherwise would be to subject municipalities to *per se* liability, or *de facto respondeat superior,* which result has been expressly rejected by the courts. *See City of Canton, Ohio,* 109 S.Ct. at 1206. According to the Supreme Court:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. [citations omitted]. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.,* 109 S.Ct. at 1206. Thus, police officers are not to be held to a standard of complete

perfection; as the Supreme Court has recognized, mistakes are inevitable and not always actionable. Only when those mistakes are due to "deliberate indifference" can a municipality be held accountable under § 1983. The latter situation occurs when it is "plainly obvious" to policy makers that further police training was required to protect constitutional rights. *See id.,* 109 S.Ct. at 1205 n. 10. This is not such a case, because there is no evidence of other incidents of this kind.

Furthermore, all officers in this case testified to significant training in the preparation and execution of warrants. Such training occurs at police recruit school, which lasts from six to eight months, at seminars held by various state and federal agencies, and at HPD briefings. "On the job" training is also required, which training is supervised by experienced police officers. *See, e.g.,* Testimonies of Karl Godsey; Edwin Higa; Dennis Naganuma; Theodore Julian; Jesse Masagatani; and Earl Koanui. In addition, the officers testified as to methods used by the HPD to ensure that warrants are properly executed. *See, e.g.,* Testimonies of Karl Godsey; Edwin Higa. Such methods include physical surveillance of subject premises, which technique was apparently not practicable in this narcotics case given the Rothman home's isolated location and the certainty of counter-surveillance. *See* Testimony of Karl Godsey.

It is also uncontested that the HPD did not issue the warrant affidavits in this case. *See, e.g.,* Testimonies of Karl Godsey; Gary Modafferi; Theodore Julian. Rather, the HPD had been assigned to execute warrants prepared by the state's Office of Narcotics Enforcement or O.N.E. Finally, Godsey himself admits that he simply failed to take the proper road to the Rothman house, thereby arriving at the plaintiffs' home by "mistake." *See* Testimony of Karl Godsey. These unchallenged facts are insufficient as a matter of law to establish municipal liability under the standard enunciated in the *City of Canton, Ohio* case. Thus, even giving plaintiffs every benefit of doubt, only one conclusion can be reached—plaintiffs cannot show "deliberate indifference" on the part of the municipality.

Nevertheless, plaintiffs vehemently argue that the municipality's attitude of deliberate indifference may be shown by the HPD's failure to produce any evidence in the form of guidelines, manuals, or classes which would teach officers how to avoid making this specific kind of mistake—i.e., to teach them not to execute warrants on the wrong premises. Additionally, the Browns argue that the HPD's failure to take any disciplinary action against these officers exemplifies a policy of deliberate indifference to plaintiffs' constitutional rights. These arguments are without merit, since no amount of literature in the form of guidelines and manuals, and no amount of additional classroom training, can completely eradicate the inherent human element of fallibility. In essence, the obvious need not be stated—that is, not to make any mistakes.

As to the HPD's lack of disciplinary action in this case, the court finds plaintiffs' argument disengenuous. The police testified, and there is no evidence to the contrary, that a report or complaint must first be filed with the HPD's internal affairs division before any disciplinary action can be initiated. This plaintiffs failed to do, choosing instead to parade this incident before the press at a scheduled press conference in which they announced that they would be filing a $10,000,000 lawsuit. If plaintiffs thereby intended to place the HPD on notice that it should commence disciplinary action in this case, that intent was misplaced. A lawsuit may not be argued as the notification for police to consider disciplinary action against its officers.

## CONCLUSION

Defendant's motion for a directed verdict is GRANTED and plaintiffs' cross motion is DENIED. Judgment is rendered in the municipality's favor and against the Browns on their federal § 1983 claims. The court's ruling may, in no way, be construed as a comment on plaintiffs' right to pursue their separate tort claims pending

before state court to which less stringent standards apply.

IT IS SO ORDERED.