McKEAGUE, Circuit Judge,
dissenting.
I must respectfully dissent from the majority because I find that the prosecutor’s actions, however egregious, are protected by absolute immunity because they were performed in the course of plea bargaining, a role intimately associated with the prosecutor’s role as an advocate of the State.
As the majority acknowledges, the absolute immunity analysis turns on the function performed, not the act itself. See Mireles v. Waco, 502 U.S. 9, 13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (“[T]he relevant inquiry is the ‘nature’ and ‘function’ of the act, not the ‘act itself.’ ”) (quoting Stump v. Sparkman, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). We agree that the functions protected are those “intimately associated with the judicial phase of the criminal process” — those, in other words, where the prosecutor acts as an advocate of the State. See Imbler v. Pachtman, 424 U.S. 409, 430, 431 n. 33, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Buckley v. Fitzsimmons, 509 U.S. 259, 272-73, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Finally, we agree that plea bargaining falls within the protected prosecutorial function of advocating for the State. Cady v. Arenac Cnty., 574 F.3d 334, 341 (6th Cir.2009) (“Conduct associated with plea bargains has long been held by this court to be ‘so intimately associated with the prosecutor’s role as an advocate of the State in the judicial process as to warrant absolute immunity.’ ”) (quoting Cole v. Smith, No. 97-5964, 1999 WL 685940, at *2 (6th Cir. Aug. 24, 1999) (unpublished)).
Notwithstanding the foregoing, the majority then promptly looks to the misconduct itself, rather than the function performed, to determine that absolute immunity does not lie. In doing so, the majority relies on non-binding authority from the Second Circuit while contravening the well-established, binding principles set out by the Supreme Court. The majority reasons that the prosecutor’s action here is not immune because it went beyond the “legitimate scope of his prosecutorial authority or jurisdiction,” as “ordering a beating is *957 not a function normally performed by a prosecutor.” That ordering a beating is outside a prosecutor’s legitimate authority and not normally performed by a prosecutor is undoubtedly true but so is suborning false testimony, fabricating evidence, and threatening witnesses— prosecutorial abuses which have all been held absolutely immune from civil damages liability because the function of the activities was within the prosecutor’s role as an advocate of the State. See Imbler, 424 U.S. at 413, 430, 96 S.Ct. 984 (granting absolute immunity to prosecutor who allegedly knowingly used false testimony and suppressed material evidence at trial); see Beckett v. Ford, 384 Fed.Appx. 435, 451-52 (6th Cir.2010) (finding the prosecutor absolutely immune from claims that he threatened witnesses, knowingly presented false testimony, and framed the plaintiff for murder); Heidelberg v. Hammer, 577 F.2d 429, 433 (7th Cir.1978) (finding claims that prosecutors destroyed and falsified evidence and suborned perjury barred by absolute immunity). As our sister circuit has aptly stated, “[immunity that applies only when the defendant did no wrong is no immunity at all.” Millspaugh v. Cnty. Dep’t of Pub. Welfare of Wabash Cnty., 937 F.2d 1172, 1175 (7th Cir.1991).
Thus, I find this case squarely controlled by Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). While the judge’s act in that case — ordering police officers “to forcibly and with excessive force seize and bring plaintiff into his courtroom” — exceeded his judicial authority, the Court reiterated that the immunity inquiry must focus on the function and not the act. Mireles, 502 U.S. at 10, 112 S.Ct. 286. Otherwise, absolute immunity becomes no immunity at all:
[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a “nonjudicial” act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge “will not be deprived of immunity because the action he took was in error ... or was in excess of his authority.”
Id. at 12-13, 112 S.Ct. 286 (quoting Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)) (omission in original). Accordingly, the Court focused on the function performed by the judge— directing police officers to bring counsel in a pending case before the court — and determined that such function was taken in the judge’s judicial capacity and thus protected by judicial immunity. Id.; see also Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir.1986) (reversing two of its prior decisions that “construed the immunity doctrines too narrowly by focusing on underlying actions instead of looking to ultimate acts.”).
The proper question then, according to Míreles, is whether action taken for the purpose of procuring a plea is a prosecuto-rial function “intimately associated with the judicial phase of the criminal process” that warrants absolute immunity. Imbler, 424 U.S. at 430, 96 S.Ct. 984. The answer is a well-established yes. See, e.g., Cady, 574 F.3d at 341; Powers v. Zimmerman, No. 96-6434, 1997 WL 704944, at *1 (6th Cir. Nov. 6, 1997) (unpublished) (holding that a prosecutor was absolutely immune to a claim that he maliciously brought a rape charge to force the plaintiff to plead guilty to an unrelated charge); see also Bresko v. John, 87 Fed.Appx. 800, 803 (3d Cir.2004) (holding that a prosecutor’s decisions regarding plea bargains are entitled to absolute immunity); Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1149 (2d Cir.1995) (holding that absolute immunity barred *958 claims that a prosecutor made false representations to prompt a plea agreement and then breached the agreement); Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1492 (10th Cir.1991) (holding that state attorneys were absolutely immune from claims that they engaged in coercive plea bargaining by threatening to file sexual assault charges against a physician if he did not agree to give up his medical practice); Briley v. California, 564 F.2d 849, 856 (9th Cir.1977) (“[P]roseeutorial immunity extends to the process of plea bargaining as an integral part of the judicial process.”) (internal quotation marks and citation omitted).
The majority’s argument that the use of excessive force is not prosecutorial activity is no different from the argument rejected in Míreles, that a judge’s use of excessive force is not “judicial activity.” The majority’s argument is, in fact, directly in line with Justice Stevens’ dissent in Míreles, where he opined that judicial immunity should not attach. He reasoned, “Ordering a battery has no relation to a function normally performed by a judge,” which reasoning was rejected by the majority. Mireles, 502 U.S. at 14, 112 S.Ct. 286 (Stevens, J., dissenting).
For the same reason, the majority’s reliance on Doe v. Phillips, 81 F.3d 1204 (2d Cir.1996), is unpersuasive. There, the Second Circuit majority also focused on the prosecutor’s act itself (the demand for a religious oath on a Bible) rather than the function of act (setting conditions for ending a prosecution). The dissent pointed out the fallacy in the majority’s reasoning:
The majority thus poses a question to which there can be one answer: Is compelling a defendant to participate in a “religious ceremony” a prosecutorial function? That inquiry, however, conflates a generic function of a prosecutor (taking a statement under oath) with the aspect of that conduct which is alleged to be unconstitutional (taking that statement in a church, on a Bible, etc.). That is not the approach we have employed in previous cases. In Dory [v. Ryan, 25 F.3d 81, 83 (2d Cir.1994) ], we did not ask whether suborning perjury was “properly within the role of a prosecutor”; we held that that inquiry was “immaterial.” In Pinaud [v. County of Suffolk, 52 F.3d 1139 (2d Cir.1995) ], we did not ask whether it was a prosecutorial function to dissemble and confect false charges. And in Schloss [v. Bouse, 876 F.2d 287 (2d Cir.1989) ], we did not ask whether procuring releases from civil liability was a prosecutorial act. In each of these cases, we asked whether the underlying conduct was related to the prosecutorial function — and granted absolute immunity if it was, whether or not the misconduct was egregious. By focusing on the nature of the misconduct in this case, the majority opinion erroneously qualifies absolute immunity.
Doe, 81 F.3d at 1214 (Jacobs, J., dissenting).
The majority here likewise focuses on the misconduct at issue and proffers a similarly misdirected question: Is ordering a beating a function normally performed by a prosecutor? Of course not, but the proper question is whether alleged misconduct was related to a prosecutorial function — i.e., was the prosecutor, regardless of the egregiousness of the act, advocating for the State? This immunity in no way countenances prosecutorial misconduct but simply recognizes that the cost of ensuring “the vigorous and fearless performance of the prosecutor’s duty that is essential to the proper functioning of the criminal justice system” is that “the genuinely wronged defendant” will be “without civil redress against a prosecutor whose malicious or dishonest action deprives him of *959 liberty.”[8] Imbler, 424 U.S. at 427-28, 96 S.Ct. 984.
Of course, absolute immunity, despite its name, does not apply in every situation. “[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.” Mireles, 502 U.S. at 12, 112 S.Ct. 286 (inter-' nal citations omitted). Further, “a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge’s judicial capacity.” Id. at 11, 112 S.Ct. 286 (internal citations omitted). Similarly, prosecutors may not avail themselves of absolute immunity for actions not prosecutorial in nature. Adams v. Hanson, 656 F.3d 397, 402 (6th Cir.2011) (“[A]bsolute immunity protects ‘only ... actions that are connected with the prosecutor’s role in judicial proceedings, not ... every litigation-inducing conduct.’ ”) (omissions in original) (quoting Burns v. Reed, 500 U.S. 478, 483 n. 2, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)).
The majority attempts to wedge its ease here, finding that ordering a beating is simply not “prosecutorial” and that Stacy cannot cure the non-prosecutorial nature of his conduct by affixing the label of “plea bargaining” onto it. The problem is that Rouse himself affixed such label, claiming that Stacy beat him in order to procure a guilty plea, and, in considering a motion to dismiss, we take the plaintiff at his word. E.g., Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir.2009) (“But there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law.”); U.S. Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623, 626 (7th Cir.2003) (“A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense.”). The majority contends that Rouse’s statements about Stacy’s thoughts and intentions are not facts but mere speculation, which warrant no particular regard by this Court. The majority would be correct if we were dealing with a complaint not specific enough, rather than too specific. Here, if Rouse proved his case exactly as he presented it, he would be foreclosed from recovery, and we are under no obligation to save his complaint by contradicting his allegations. See NicSand, Inc. v. 3M Co., 507 F.3d 442, 458 (6th Cir.2007) (“When the complaint itself gives reasons to doubt plaintiff’s theory, and when later pleadings confirm those doubts, it is not our task [under Rule 12(b)(6) ] to resuscitate the claim but to put it to rest. Nothing prevents a plaintiff from pleading itself out of court_”) (internal quotation marks and citation omitted); Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir.2008) (“A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.”) (internal quotation marks and citation omitted).
Rouse’s complaint and subsequent amendments are therefore dispositive. This case would be a different one had Rouse alleged that he was beaten in retaliation for pleading guilty. Then, the alleged beating would have no “relation to a general function normally performed” by a prosecutor, Mireles, 502 U.S. at 13, 112 S.Ct. 286, because a prosecutor has no role *960 in meting out punishment. See, e.g., Gobel v. Maricopa Cnty., 867 F.2d 1201, 1206 (9th Cir.1989) (“The prosecutors are not entitled to absolute immunity on the claim that they illegally punished [plaintiffs] during their post-arrest detention, because such conduct is not intimately associated with the judicial phase of the criminal process and has nothing to do with a prosecutor’s role as an advocate.”), abrogated on other grounds as stated in Merritt v. Cnty. of Los Angeles, 875 F.2d 765, 769 (9th Cir.1989). Even had Rouse pleaded only that he was beaten, without specifying for what purpose, the liberal construction that we afford to the pleadings of pro se litigants, Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir.1999), and requirement to construe all facts in the light most favorable to the plaintiff at the motion to dismiss stage, Logsdon v. Hains, 492 F.3d 334, 340 (6th Cir.2007), would allow us to draw the reasonable inference that the alleged assault was ordered for no prosecutorial purpose. But Rouse specifically and repeatedly alleged that Stacy ordered the beating for the purpose of inducing him to plead guilty, which begins and ends his case.
The majority, however, finds Rouse’s complaint beside the point. See maj. op. at 952-53 (“Ultimately, it is of no consequence whether the beating of Rouse is more accurately described as punitive or coercive.”). It finds that, regardless of the label affixed to Stacy’s act, Stacy acted “manifestly or palpably beyond [his] authority” and “in the clear absence of all jurisdiction.” Maj. op. at 952 (quoting Doe, 81 F.3d at 1210). In other words, the majority reasons that there comes a point at which conduct cannot be considered “plea bargaining” at all.
As stated above, I agree that absolute prosecutorial immunity has limits. At some point, a prosecutor’s misconduct may cross from advocating the State’s case (however outrageously) to personal vendetta. It was on such grounds that Doe’s dissent distinguished demands for bribes or sexual favors, misconduct that it agreed “would be unsheltered by absolute immunity.” 81 F.3d at 1214 (Jacobs, J., dissenting) (“These acts of misconduct — which serve purely personal interests without an alloy of a public function — differ in kind from the misconduct that is protected by absolute immunity. There is a difference between performing one’s office, however disgracefully, and offering to sell it for a purely personal benefit.”). It is the “alloy of a public function” on which the analysis turns and which decides this case. See Adams v. Hanson, 656 F.3d 397, 403 (6th Cir.2011) (“The analytical key to prosecu-torial immunity, therefore, is advocacy— whether the actions in question are those of an advocate.”) (emphasis in original) (quoting Holloway v. Brush, 220 F.3d 767, 775 (6th Cir.2000) (en banc)). While a less specific complaint might have given rise to an inference that the alleged beating was merely a personal power trip or meted out as punishment, the complaint leads us to but one conclusion — that Stacy was acting as an advocate of the State.
Taking the allegations in Rouse’s complaint as true, the only reasonable inference is that the alleged assault was perpetrated for the purpose of procuring a plea bargain. Once that is established, it follows that Stacy’s actions are protected by absolute prosecutorial immunity under the holding and reasoning of Míreles. Thus, I respectfully dissent.

. The lack of civil redress does not mean the lack of other forms of relief. Defendants have available various post-conviction procedures in which to challenge the fairness of their trial or' voluntariness of their plea. Here, Rouse did, in fact, seek to withdraw his guilty plea in trial court and on appeal. He challenged the voluntariness of his plea claiming not that Stacy coerced it but that he was not informed of the probation restrictions applicable to his sentence. Rouse v. Kentucky, No. 2007-CA-002020-MR, 2008 WL 4092869, at *1 (Ky.Ct.App. Sept. 5, 2008).