ELROY RUNNELS, Plaintiff-Appellant, *v.* LILY M. OKAMOTO, City Council Auditor, individually and in her official capacity; GEORGE KOGA, CLESSON Y. CHIKASUYE, RUDY PACARRO, FRANK W. C. LOO, GEORGE G. AKAHANE, MARY GEORGE, TORAKI MATSUMOTO, and JAMES J. SHIGEMURA, and then member, WALTER M. HEEN, Council members as of 1971, individually and collectively as the City Council of Honolulu, Defendants-Appellees

NO. 5578

AUGUST 29, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA and MENOR, JJ.

2

OPINION OF THE COURT BY MENOR, J.

On December 1, 1972, the plaintiff filed a defamation action against the defendants. Summary judgment in favor of the defendants was entered by the trial court on October 16, 1973. From the order granting summary judgment the plaintiff appeals.

I

We turn first to the plaintiff's claim for relief against defendants-council members Koga, Chikasuye, Pacarro, Loo, Akahane, George, Matsumoto, and Shigemura.

The audit prepared by defendant Okamoto, containing the alleged defamatory matter, was transmitted by her to defendant Heen on May 11, 1971. Thereafter, on May 14 and 15, 1971, the contents of the report were released by defendant Heen to the news media. Copies of it were distributed to the defendants-council members on or about May 17, 1971. However, these defendants played no part whatsoever in its earlier release to the news media and made no official comments regarding its contents.

It is an elementary principle of tort law that a defamation to be actionable requires publication. The interest which is here protected is that of reputation, and for tort liability to lie

for either slander or libel the defamation must be communicated to some third party other than the person defamed.[1] The plaintiff predicates his cause of action against the defendants-council members solely upon the proposition that they "accepted the said [defamatory] report as true and valid, thereby lending credulity and veracity to the innuendoes that plaintiff was in fact, dishonest and a thief."

It appears, however, that this "acceptance" on the part of the city council took place subsequent to the publication of this alleged defamation by defendant Heen. While everyone who participates in the publication of defamatory remarks may be properly charged with having published them, the mere acceptance of such remarks as true cannot constitute publication, regardless of how much weight that acceptance may lend to their apparent validity. The plaintiff must plead and prove, where the defendant himself has not published the defamatory matter, that the defendant through a third party directed or procured its publication.[2]

Case law is completely devoid of the rule of law urged upon us by the plaintiff that members of a legislative body have an affirmative legal duty to disavow and disassociate themselves from a libel published by one of their number, and that their failure to do so ratifies or "accepts" that libel and its attendant liability. The law of defamation cannot be applied in so illogical a fashion.

The motion for summary judgment in favor of defendants Koga, Chikasuye, Pacarro, Loo, Akahane, George, Matsumoto and Shigemura was properly granted by the trial court, and as to these defendants the judgment in their favor is affirmed and the plaintiff's appeal is dismissed.

---

[1] W. PROSSER, THE LAW OF TORTS 766, (4th ed. 1971) [hereinafter cited as PROSSER]; 3 RESTATEMENT OF TORTS §§ 558, 577 (1938); 1 F. HARPER & F. JAMES, THE LAW OF TORTS § 5.15 (1956) [hereinafter cited as HARPER & JAMES]; A. HANSON, LIBEL AND RELATED TORTS § 59 (1969); Emo v. Milbank Mutual Ins. Co., 183 N.W.2d 508, 512 (N.D. Sup. Ct. 1971); Gaetano v. Sharon Herald Co., 426 Pa. 179, 182, 231 A.2d 753, 755 (1967); Pate v. Tyee Motor Inn, Inc., 77 Wash.2d 819, 821, 467 P.2d 301, 302 (1970).

[2] 3 RESTATEMENT OF TORTS § 577, comment f at 194 (1938); PROSSER 770; HARPER & JAMES § 5.18; Zuck v. Interstate Pub. Corp., 317 F.2d 727, 733 (2nd Cir. 1963).

4

II

We turn now to the plaintiff's claim for relief against defendants Okamoto and Heen. At all times pertinent to the issue here before us Mrs. Okamoto was city council auditor for the City and County of Honolulu, and Mr. Heen then held the office of city councilman.

Sometime before May, 1971, Councilman Heen requested Mrs. Okamoto to examine the operations of the box office at the Honolulu International Center [hereafter HIC] and report back to him. On May 11, 1971, Okamoto submitted her report to Heen. It was highly critical of the operations and procedures of the HIC box office, then under the management of the plaintiff. On May 14, 1971, Heen was interviewed by Ken Kashiwahara of KHVH-TV relative to the report. Heen also released the contents of the report to newspaper reporter Dave Shapiro, who authored an article regarding the matter which appeared in the May 15, 1971 edition of the Honolulu Star-Bulletin.[3] On May 17, 1971, defendant Heen transmitted copies of the report to the other members of the City Council.

We find the rule of law enunciated earlier this term by this court in *Medeiros v. Kondo*, 55 Haw. 499, 522 P.2d 1269 (1974) controlling and dispositive on the issues here presented.

In *Kondo*, we announced that the doctrine of "absolute immunity" would no longer be permitted to shield a nonjudicial government officer from liability for his tortious acts. In that case the plaintiff, a civil service employee with the State Department of Taxation, alleged in his complaint that the director of that department acted maliciously and wilfully to harass the plaintiff into relinquishing his position. The defendant moved to dismiss and the trial court granted his motion for judgment on the pleadings. In a unanimous decision of this court we reversed. Sweeping aside the former barrier to suit which the doctrine of absolute immunity had created,[4]

---

[3] Neither the television station nor the newspaper was made a party defendant in the plaintiff's lawsuit.

[4] *See* Barr v. Matteo, 360 U.S. 564 (1959).

we held that the plaintiff must be allowed his "inquiry into malice." At the same time we imposed upon the plaintiff the burden "of adducing clear and convincing proof that defendant was motivated by malice and not by an otherwise proper purpose." 55 Haw. at 505, 522 P.2d at 1272.

What we did in *Kondo* was to strike a balance between the interests of the maliciously injured party and the interests of the good faith official acting for a proper purpose by allowing the plaintiff's action to proceed, while at the same time limiting the defendant's liability only to that official conduct which was transparently improper, by establishing a higher standard of proof than is normally required in a tort case.

This greater burden of proof requirement is applicable to lawsuits against those officials who were formerly within the parameters of *Barr v. Matteo,* 360 U.S. 564 (1959). Defendants Okamoto and Heen fall into this category. Defendant Heen was an elected councilman for the City and County of Honolulu. Defendant Okamoto was the city council auditor who was charged with the overall responsibility for directing the post-audit, the fiscal, budgetary and management analyses, and the general research programs in behalf of the city council. Her duties included analyzing budgetary requests, budget management and controls, and management compliance of city council approved programs. She was the adviser to the city council on fiscal matters and performed other related duties as required. Guided by the general policies of the city council, she possessed a wide range of discretion in carrying out the functions of her office.

While the defendants in their answers to the plaintiff's complaint have denied that the statements contained in the report were defamatory, we must assume for the purposes of this appellate review that the plaintiff was in fact defamed. It remains then to ascertain from the record before us whether there exists a genuine issue of malice as a material fact, and if not, whether the defendants are entitled to judgment as a matter of law. HRCP, Rule 56; *Abraham v. Onorato Garages,* 50 Haw. 628, 446 P.2d 821 (1968).

The existence or absence of malice is generally a question for the jury. *Goldwater v. Ginzburg,* 261 F.Supp. 784 (D. N.Y.

1966); 6 MOORE'S FEDERAL PRACTICE § 56.17 [41-.1] (2d ed. 1948). However, when this issue has been removed from the case by uncontroverted affidavits and depositions, and the moving party is entitled to judgment as a matter of law, summary judgment will be granted. *Cf. Tagawa v. Maui Pub. Co.,* 50 Haw. 648, 448 P.2d 337 (1968). The plaintiff has had his "inquiry into malice," and the pleadings, interrogatories, and uncontroverted affidavits, depositions and exhibits, taken together, show the absence of a genuine issue as to this material fact. The bare allegations in the complaint which assert that the defendants were motivated by malice are not sufficient, in and of themselves, to raise a material issue of fact regarding an essential element of the plaintiff's cause of action. *Richards v. Midkiff,* 48 Haw. 32, 396 P.2d 49 (1964); *Angst v. Great Northern Railway Company,* 131 F.Supp. 156, (D. Minn. 1955).

The record before us is entirely devoid of any suggestion that defendant Okamoto acted maliciously, or for an improper purpose. It was her duty and responsibility to conduct the investigation of the HIC box office as directed by defendant Heen. Virtually all of the information from which she prepared her report was furnished to her by Kazuo Mihara, one of the auditors on her staff, and she had no reason to doubt his reliability or the accuracy of his reports. Mr. Mihara himself was deposed by the plaintiff, and there is nothing in the record which would tend to reflect adversely upon his competency and dependability. Nor do we have here a situation where malice ought to be presumed from the mere publication of the alleged libel. *See Murphy v. Maui Pub. Co.,* 23 Haw. 804 (1917). Under *Kondo* malice and improper purpose on the part of the defendant must be shown by clear and convincing evidence.

Similarly, defendant Heen was fully justified in relying upon the accuracy and reliability of the city council auditor's report. Mrs. Okamoto was an attorney and a certified public accountant, with considerable experience in the field of accounting and fiscal management.

The fact that the report was labeled "confidential" when originally transmitted by Mrs. Okamoto is immaterial. As a

precautionary measure, she marked it confidential "because it states ways to cheat the system." What her superiors did with the report thereafter was entirely within their prerogative. They were under no statutory inhibition to keep it confidential for all purposes. The provisions of the City and County of Honolulu Charter[5] adverted to by the plaintiff is not applicable under the facts as they exist in this case. The public had a legitimate interest and concern in the operation of this particular agency of the city government. Defendant Heen recognized the public's right to be kept informed,[6] and in his discussions with the news media he confined his remarks to the basic thrust and content of the city council auditor's report. The record fails to reveal that defendant Heen was motivated by malice or by an otherwise improper purpose.

Having found the record complete for our purposes here, and deeming further oral argument unnecessary, we dismiss the appeal as to defendants Okamoto and Heen, and the judgment of the circuit court as to them is affirmed.

*Bernard K. Trask,* for plaintiff-appellant.

*Walter Chuck (Chuck & Fujiyama* of counsel) for defendants-appellees Koga, Chikasuye, Pacarro, Loo, Akahane, George, Matsumoto, Shigemura and Heen.

*Frank Padgett (Padgett, Greeley & Marumoto* of counsel) for defendant-appellee Lili Okamoto.

---

[5] Section 11-101 Standards of Conduct —

1. No employee, councilman or other office of the city shall:

. . . .

 (c) Disclose confidential information gained by reason of his official position, nor shall he otherwise use such information for his personal gain or benefit.

. . . .

This section is contained in Article XI of the City Charter, entitled Code of Ethics. This article is designed to sanction conduct on the part of city employees who choose to act in their own best interests or to otherwise violate the public trust. The remaining relevant portions of Section 11-101 are instructive and forbid any city employee, including council-members and officers from: accepting gratuities which may tend to influence him in the discharge of his public duties [11-101 (a)]; using his position to secure special privileges [11-101 (b)]; engaging in a transaction on behalf of the city in which he has a direct or indirect financial interest [11-101 (d)]; receiving compensation for his official position from any source other than the city [11-101 (e)].

[6] *Cf.* Section 12-110; Tighe v. City and County of Honolulu, 55 Haw. 420, 520 P.2d 1345 (1974). The City and County of Honolulu evidences a statutory inclination toward full disclosure of its books and records.