**Emory M. TOKUHAMA, Plaintiff,**

v.

**CITY AND COUNTY OF HONOLULU, a municipal corporation; Honolulu Police Department; Douglas Gibb, as Chief of Police of Honolulu Police Dept.; Kenneth F. Nelson and Gilbert Kilantang, Defendants.**

**Civ. No. 88–00934 ACK.**

United States District Court, D. Hawaii.

Oct. 31, 1989.

---

Leu & Okuda, Gary Y. Okuda, Russell K.L. Leu, Suematsu & Lee, Leighton K. Lee, Honolulu, Hawaii, for plaintiff.

Richard D. Wurdeman, Ted H.S. Hong, Deputy Corp. Counsel, Honolulu, Hawaii, for defendants.

## ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDMGENT

KAY, District Judge.

## FACTS

Currently before this Court is Defendant City and County of Honolulu's Motion for Summary Judgment on all counts. Hearing on this Motion was held on September 18, 1989. On September 20, 1989, Movant filed supplemental exhibits in support of its motion for summary judgment. *Sua sponte*, on September 25, 1989, this Court granted Plaintiff until October 2, 1989 to submit any response to Movant's supplemental exhibits which Plaintiff was inclined to submit for this Court's consideration. On October 2, 1989, Plaintiff filed its supplemental memorandum in opposition to Movant's motion for summary judgment, in which Plaintiff did not challenge the validity of Movant's supplemental exhibits.

This matter arises out of Plaintiff's civil actions alleging deprivation of civil rights in violation of 42 U.S.C. § 1983, alleging that Defendant City and County of Honolulu ("Honolulu") through its agency, Honolulu Police Dept. ("HPD") (i) failed to properly train, supervise and discipline Defendant police officers, and (ii) adopted and implemented policies and/or customs which are violative of the Fourth amendment of the United States Constitution. In addition, Plaintiff has alleged two pendent state tort actions of false arrest and malicious prosecution against HPD officers Nelson and Kilantang in their individual capacities as well as *respondeat superior* claims against Honolulu, HPD, and Douglas Gibb on those pendent state tort actions.

According to Plaintiff's version of the facts, on the night in question, August 3, 1987, Plaintiff entered his parked automobile, turned his vehicle's headlights on and drove his vehicle from the parking lot onto the public streets of the City of Honolulu. Plaintiff maintains that he had drunk no alcohol on the night of August third and that he drove his vehicle in a safe and prudent manner.

Two HPD officers, on the other hand, allegedly observed Plaintiff exiting the parking lot with his headlights off, at which time the officers allegedly observed that Plaintiff's face was flushed and dazed. The two officers followed Plaintiff for approximately two miles, allegedly observing his vehicle swaying between driving lanes. It is uncontested that at no time did Plaintiff's vehicle exceed the posted speed limit.

The officers ordered Plaintiff to stop his vehicle, informing him that he was being stopped for drunk driving. Plaintiff was administered a field sobriety test which the arresting officers claim he failed but Plaintiff implies having passed.

Plaintiff was arrested for driving under the influence of alcohol and transported to the Honolulu Police Station. Defendant police officers claim that they had probable cause to arrest Plaintiff based upon the following: (i) Plaintiff was driving at night without his vehicle's lights on, (ii) his face was flushed and dazed, (iii) his vehicle was swerving between lanes, (iv) he failed two

out of three parts of a field sobriety test, and (v) one of the police officers smelled alcohol on Plaintiff's breath. At the police station Plaintiff was administered the Intoxilyzer Breath test which indicated a .00 blood alcohol content. Defendant HPD has stipulated that the Intoxilyzer was properly functioning.

After passing the Intoxilyzer test, Plaintiff was led to a jail cell, fingerprinted, and booked for driving without headlights. This was the first mention, according to Plaintiff, of his driving without headlights. Plaintiff was not charged with driving under the influence of alcohol. Plaintiff was arrested at 12:26 a.m., tested for blood alcohol content, fingerprinted, booked on the driving without headlights charge, and released on $35.00 bail at 1:40 a.m.

Plaintiff's trial date for driving without headlights was scheduled for November 24, 1987. Both arresting officers failed to appear at that trial and the charges were dismissed.

Plaintiff filed the present suit in the Circuit Court of the First Circuit, State of Hawaii, on November 16, 1988. Defendants removed the case to this Court.

DISCUSSION

Plaintiff asserts three bases of liability as regards Defendant City and County of Honolulu. First, Plaintiff contends that Honolulu is liable under 42 U.S.C. § 1983. Section 1983 liability is argued under two different theories. Plaintiff asserts (i) that HPD is inadequately trained in the area of warrantless stops and arrests, and/or (ii) that as a matter of policy or custom, HPD implements an unconstitutional driving under the influence of alcohol ("DUI") profile. Second, Plaintiff contends that Honolulu is vicariously liable for the § 1983 violative acts of its employee police officers. Finally, Plaintiff contends that Honolulu is vicariously liable for the common law torts of its employee police officers.

*Summary Judgment Standard*

Summary Judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.

R.Civ.P. 56(c). The Supreme Court of the United States has declared that Summary Judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Ninth Circuit has fully adopted and implemented the *Celotex* rule:

[I]f the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *citing, Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

In order to withstand a motion for summary judgment, therefore,

[T]he non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).... [I]f the factual context makes the non-moving party's claim *implausible*, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *California Architectural*, 818 F.2d 1466, 1468 (emphasis in original), *citing, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

It is apparent that potential application of Rule 56 Summary Judgment has been substantially broadened. The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural*, 818 F.2d 1466, 1468. Moreover, the Supreme Court recently stated that

"[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. at 1355.

■ As always, however, in evaluating the evidence submitted by both parties, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630–31 (9th Cir.1987).

### 42 U.S.C. § 1983

Section 1 of the Ku Klux Klan Act of 1871, Rev.Stat. § 1979, as amended, Title 42 U.S.C. § 1983, establishes:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ Moreover, it is well established that a municipality, as well as other bodies of local government, is a "person" for purposes of § 1983 liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 922–23, 99 L.Ed.2d 107 (1988).

■ The conduct of police officers in the execution of warrantless arrests is subject to judicial review as to its reasonableness. Where a district court finds that a warrantless arrest was unreasonable *per se*, the court must then pursue a three-tiered inquiry in order to determine whether liability should attach to the municipality defendant. The court must determine whether the Constitutionally violative arrest was (i) the direct result of inadequate police training or supervision, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) ("inade-

quate training" of police officers may serve as the basis for § 1983 municipal liability as being an unconstitutional policy), (ii) the product of "a policy statement, ordinance, regulation or decision officially adopted and promulgated by [the municipality's] … officers." *Praprotnik*, 108 S.Ct. at 923, *quoting*, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), or (iii) was illustrative of a "custom" which is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970); *see also, City of Canton*, 109 S.Ct. at 1203 n. 5 (noting that although the theory of unconstitutional "policy" is closely related to the theory of unconstitutional "custom," that the two concepts may provide distinct bases for recovery under § 1983); *see also, Praprotnik*, 108 S.Ct. at 926. If none of these theories is satisfied, the municipality may not be held liable under § 1983.

Plaintiff in the instant case has alleged that Honolulu has failed to properly train, supervise and discipline Defendant Police Officers. Plaintiff has also alleged that Honolulu has adopted an unconstitutional "DUI Profile." Plaintiff's theory regarding said "profile" as it relates to § 1983 liability is unclear, but he appears to argue that the profile constitutes an impermissible "policy" as defined by *Monell*. The "DUI Profile," if unconstitutional however, may also constitute an impermissible "custom," as defined by *Adickes*. This Court is mindful of the caveat stated in footnote five of the *City of Canton* decision regarding the distinction between a theory of § 1983 liability premised upon an unconstitutional "policy" as compared to an unconstitutional "custom." Nevertheless, since this Court finds that the "DUI Profile" to which Plaintiff objects does pass Constitutional muster, it is not necessary to make the nice distinction regarding whether such "profile" constitutes either a "policy" or "custom" of the Honolulu Police Department, as the "profile" is Constitutionally permissible under either theory.

For the limited purposes of considering the instant Motion for Summary Judgment, this Court, in accord with its duty to construe all evidence and inferences to be drawn therefrom in the light most favorable to Plaintiff, shall presume the accuracy of Plaintiff's version of the facts of his arrest.

Accordingly, the Court will presume that at the time immediately preceding his arrest, Plaintiff (i) was driving at a normal speed with his headlights on, (ii) was not weaving from lane to lane, (iii) had neither a flushed face nor a dazed look, (iv) did not fail the field sobriety test, and (v) he exhibited no other characteristics that would lead a reasonable police officer to have either a reasonable suspicion or probable cause to believe that Plaintiff was driving his vehicle under the influence of alcohol.

This Court agrees with Plaintiff that under these presumed facts, Defendant police officers would have had neither reasonable suspicion to stop Plaintiff nor probable cause to arrest him. Even assuming that the stop and arrest by HPD was Constitutionally violative, however, Movant Honolulu may be held liable under 42 U.S.C. § 1983 only if such action was the direct result of inadequate police training/supervision, or if such action was illustrative of a policy or custom that is violative of the United States Constitution.

a. Inadequate Training Theory

■ Regarding the "inadequate training" theory, liability may attach to Movant only if the following three-prong test is satisfied:

First, it must be determined whether the existing training program is adequate. The adequacy of a particular training program must be resolved "in relation to the tasks the particular officers must perform." A training program will be deemed adequate if it "enables officers to respond properly to the usual and recurring situations with which they must deal."

Second, if the training program is deemed inadequate, it may justifiably be said to constitute a city policy. Such will be the case, however, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." This heightened degree of culpability on the party [sic] of a municipality may be established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

Finally, inadequate training that manifests deliberate indifference on the part of a municipality must be shown to have "actually caused" the constitutional deprivation at issue. *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989), *quoting, City of Canton*, 109 S.Ct. at 1205–07.

*City of Canton* expressly raised the standard of "gross negligence" previously employed by the Ninth Circuit Court of Appeals to a standard of "deliberate indifference." *Merritt*, 875 F.2d at 769. The United States Supreme Court noted that even adequately trained police officers occasionally make mistakes and the mere fact that they do so "says little about the training program or the legal basis for holding the city liable." *City of Canton*, 109 S.Ct. at 1206. Only where failure to train amounts to "deliberate indifference" to the rights of persons with whom the police come into contact, therefore, will a cause of action arise against a municipality under § 1983.

Since this Court finds that the City and County of Honolulu, acting through its agent, the Honolulu Police Department, has not exhibited a "deliberate indifference" to the training of its police officers in the area of warrantless stops and arrests, it is not necessary to reach the first and third prong of the *Merritt* test, *i.e.*, the adequacy of the existing training program or whether alleged inadequate training "actually caused" the alleged Constitutional deprivation at issue.

According to the September 20, 1989 affidavit of Alexander W. Thoene, Jr., current-

ly employed as Deputy Corporation Counsel for the City and County of Honolulu and formerly an instructor at the Honolulu Police Department Academy, HPD officers receive extensive training in the subject area of Constitutional rights relevant to warrantless stops and arrests. Since there exist no disputes as to the contents of HPD's proffered training materials, the Constitutional adequacy of HPD's training program in the area of warrantless stops and arrests is a legal issue and is, therefore, the proper subject of a Motion for Summary Judgment.

Police officer education in the laws of arrest includes approximately eighteen hours of classroom instruction, assigned reading material (including L. Waddington *Arrest, Search and Seizure*, (1974); W. Katsaris, *Evidence and Procedure in the Administration of Justice* (1975), and several handouts on the subject of Constitutional rights); video tape demonstrations of various stop and arrest scenarios; mock crime scenarios in which recruits directly participate; classroom discussions, and; examinations requiring a 70% passing grade.

Listed in the course description for the "Laws of Arrest" class which every recruit is required to pass are the following performance objectives: (i) the student will understand and have a working knowledge of the Fourth Amendment of the United States Constitution and he will be able to identify violations of a person's right to privacy under the Constitution, (ii) the student will be able to identify and contrast the concepts of probable cause to arrest or search versus reasonable suspicion to conduct an investigative detention, (iii) the student will identify probable cause or reasonable suspicion factors and determine whether the stop or arrest situation is Constitutional, (iv) the student will identify the limitations of the officer's authority in a warrantless arrest situation, and (v) the student will identify and recite the legal definition of probable cause and reasonable suspicion.

Based upon the affidavit of Mr. Thoene, as well as the performance objectives and syllabus of HPD's required class entitled "Laws of Arrest," this Court does not find that HPD has exhibited a "deliberate indifference" to adequately training its employee police officers as to the Constitutional requirements of a warrantless stop or arrest. Plaintiff, therefore, has not met his burden of establishing § 1983 liability on the part of the City and County of Honolulu under his inadequate training theory.

b. Unconstitutional "DUI Profile" Theory

■ Pursuant to 42 U.S.C. § 1983, municipalities, such as the City and County of Honolulu, may be held liable for the Constitutional violations of their police officers if the violation resulted from a municipal "policy or custom." *See Merritt*, 875 F.2d at 769, *citing, Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

The issue in the instant case, therefore, is whether the arrest of Plaintiff resulted from unconstitutional HPD policies or customs regarding warrantless arrests of persons suspected of driving under the influence of alcohol. If Plaintiff fails to establish the existence of such unconstitutional policies or customs, his allegations merely allege the existence of erroneous police actions that must be viewed in isolation and which are not attributable to HPD. *See Merritt*, 875 F.2d at 770 ("Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the [municipality]"); *see also, City of Canton*, 109 S.Ct. at 1203; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988).

■ On the other hand, proof of a single incident of errant behavior may be sufficient basis for imposing municipal liability where such incident is shown to be the product of an established municipal policy. It has long been settled that a municipality may be liable for a single decision by its legislative body. *See, e.g., Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing); *Newport v. Fact*

*Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (City Council canceled license permitting concert because of dispute over content of performance).

■ In addition, it is now settled that municipal liability may be based upon Constitutionally impermissible actions by officials other than members of a city counsel "whose acts or edicts may fairly be said to represent official policy." *See, e.g., Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Where a decision to adopt a particular course of action is implemented by a municipality's authorized decisionmaker, possessing "final authority" to establish municipal policy regarding the subject action, such a decision may represent a governmental "policy." In such a circumstance, "the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). The Supreme Court clearly established in *Pembaur,* however, that "[t]he official must ... be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.,* at 482–83, 106 S.Ct. at 1299–1300.

■ While Plaintiff in the instant action does not allege the existence of a formal legislative act that is Constitutionally violative, it may be fairly inferred from his Complaint against Douglas Gibb, Chief of Police of the Honolulu Police Department, that Plaintiff alleges the existence of a Constitutionally impermissible decision by a government official having final authority to establish municipal policy regarding warrantless stops and arrests of persons suspected of driving under the influence of intoxicating beverages.

In the instant case, however, it will not be necessary to decide whether Douglas Gibb indeed implemented Honolulu's policy for stopping and arresting persons suspected of driving under the influence of alcohol or whether Mr. Gibb is in fact the person responsible for establishing final government policy respecting warrantless stops

and arrests. Neither of these inquiries is required in the instant case because the only "policy" decision posited by Plaintiff as being Constitutionally violative is the alleged use of a "DUI Profile" which this Court has determined passes Constitutional muster.

■ Finally, municipal liability may also arise in the absence of any action by either a legislative body or by an official whose edicts may fairly be said to represent official policy. Liability may arise where a Constitutionally impermissible "custom" is practiced or permitted. In *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the United States Supreme Court stated that

[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik,* 108 S.Ct. at 926, *quoting, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68 [90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142] (1970).

Plaintiff in the instant case alleges that HPD employs an unconstitutional "DUI Profile" in its customary practice of observing and arresting persons suspected of driving under the influence of alcohol. As evidence of said profile Plaintiff proffers Defendant's Revised Lesson Outline entitled "Driving Under the Influence/Enforcement." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exhibit 6, at 3–5 especially ¶ 6. Defendant, on the other hand, contends that the Revised Lesson Outline is a training guide and not a general order, departmental regulation, policy, or custom. Even if Defendant's Revised Lesson Outline is determined to constitute a "DUI Profile," however, Plaintiff has the burden of demonstrating that said "profile" is unconstitutional. Since there exist no disputes as to the contents of the proffered "DUI Profile," the Constitutionality of the same is a legal issue and is, therefore, the proper

subject of a Motion for Summary Judgment.

It is now well-settled that the use of "profiles" by law enforcement agencies is not Constitutionally impermissible. The United States Supreme Court in *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989) (C.J. Rehnquist), held that "Drug Courier Profiles" are not *per se* unconstitutional. Thus, an aggregate of factors may properly amount to reasonable suspicion even though, when viewed individually, such factors are consistent with innocent behavior. *Id.*, 109 S.Ct. at 1586. Regarding the Constitutionality of "Drug Courier Profiles," the Court stated:

> A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a "profile" does not somehow detract from their evidentiary significance as seen by a trained agent. *Id.* at 1587.

Moreover, the *Sokolow* Court reaffirmed the longstanding line of authority beginning with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) which established that a police officer is not required to have "probable cause" to stop and detain an individual suspected of criminal activity:

> [T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause. *Sokolow*, 109 S.Ct. at 1585.

There is no evidence in Plaintiff's proffered "profile" of a formal policy or custom enforced by HPD of stopping drivers of motor vehicles without "reasonable suspicion" and of arresting them without "probable cause." The Revised Lesson Outline, in direct contradiction of Plaintiff's allegations of an unconstitutional policy or custom, specifically admonishes officers not to stop suspect vehicles without probable cause: "Stop suspect vehicles to determine sobriety, *but have probable cause*, other-

wise you are wasting time." Revised Lesson Outline at 3 (emphasis in original). In so admonishing its officers, HPD is actually holding them to a higher standard than is required by the Constitution. The Fourth Amendment, as interpreted in *Terry v. Ohio* and its progeny, requires only that an officer who stops and detains an individual must have reasonable suspicion of criminal activity supported by articulable facts.

HPD's Revised Lesson Outline provides a five page guide to law enforcement in the subject area of driving under the influence of alcohol. The "Outline" includes an extensive list of twenty-two items that may aid the police officer in his ability to detect a person driving under the influence of alcohol. No one item or sub-group of items is proffered as a definite indicator of intoxication requiring the police officer either to stop or arrest a driver demonstrating such characteristics.

This Court is inclined to agree with HPD that its Revised Lesson Outline does not constitute an order, policy, or custom whereby police officers are required to stop all persons fitting a particular "profile." Rather, as suggested by the title "Detection Techniques," the outline serves merely as a guide in training police officers regarding characteristic circumstances and actions which may warrant further investigation. This Court concludes, however, that even if the guidelines articulated in the Revised Lesson Outline do constitute a DUI profile, that Plaintiff has failed to establish under *Sokolow* that said "profile" is an unconstitutional order, policy, or custom.

Plaintiff has thus failed to establish Title 42 U.S.C. § 1983 liability as to Honolulu under any of its theories. Since there exist no genuine issues of material fact, and since Honolulu is entitled to judgment as a matter of law, Summary Judgment is proper and is hereby granted in favor of Defendant City and County of Honolulu as to the issue of "personal" liability under § 1983.

### *Respondeat Superior Liability Under § 1983*

Plaintiff alleges that Defendant police officers stopped and arrested him

without probable cause in violation of the Fourth Amendment of the Constitution of the United States for which Defendant police officers are liable under 42 U.S.C. § 1983. Plaintiff contends in his Complaint that Defendant Honolulu is liable for the actions of HPD officers under the doctrine of *respondeat superior.* The United States Supreme Court held in *City of Canton,* 109 S.Ct. at 1203, however, that *"Respondeat superior* or vicarious liability will not attach under § 1983." Plaintiff acknowledged in open court that under *City of Canton,* Honolulu is not vicariously liable under § 1983 for the Constitutionally violative actions of its employee police officers. Honolulu, therefore, has no vicarious liability for any § 1983 action filed against its employee police officers. Accordingly, Summary Judgment is hereby granted in favor of City and County of Honolulu as to the issue of *respondeat superior* liability under 42 U.S.C. § 1983.

### *Respondeat Superior Liability under State Tort Claims*

Plaintiff has asserted state tort claims of false arrest and malicious prosecution against Defendant police officers and *respondeat superior* liability against Movant as the employer of those officers. Plaintiff cites convincing Hawaii authority in support of his *respondeat superior* claims against Movant for the tortious acts of its employees. *See Orso v. City and County of Honolulu,* 56 Haw. 241, 534 P.2d 489 (1975); *Medeiros v. Kondo,* 55 Haw. 499, 522 P.2d 1269 (1974); *Runnels v. Okamoto,* 56 Haw. 1, 525 P.2d 1125 (1974); *see also, Raysor v. Port Authority,* 768 F.2d 34 (2d Cir.1985) (upheld dismissal of § 1983 action predicated upon Port Authority's liability under *respondeat superior* theory, but reversed dismissal of vicarious liability under pendent state law claims, holding that employer remained liable for torts of its employee).

In light of established precedent under Hawaii law, as well as the decision of the United States Court of Appeals for the Second Circuit in *Raysor v. Port Authority,* this Court hereby denies Defendant's Motion for Summary Judgment as to *re-*

*spondeat superior* liability under Plaintiff's pendent state tort actions against City and County of Honolulu's employees for false arrest and malicious prosecution.

In accordance with the foregoing discussion, and in the interests of justice, Defendant City and County of Honolulu's Motion for Summary Judgment is hereby partially granted and partially denied.