**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000694
24-NOV-2025
08:32 AM
Dkt. 50 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


ANTHONY BELLAMY, Plaintiff-Appellant,
v.
CITY AND COUNTY OF HONOLULU; NICKOLAS T. HIRATA,
OFFICER #1, in his individual capacity as a Honolulu
police officer; DYLAN TORRES, OFFICER #2, in his/her
individual capacity as a Honolulu police officer;
BYRON MARFIL, OFFICER #3, police officer in his/her
individual capacity as a Honolulu police officer;
and DIANA A.P. MIRANDA, OFFICER #4, in his/her
individual capacity as a Honolulu police officer,
Defendants-Appellees,
and DOE DEFENDANTS 1-25, Defendants


NO. CAAP-23-0000694


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CCV-21-0001403)


NOVEMBER 24, 2025


HIRAOKA, PRESIDING JUDGE, MCCULLEN AND GUIDRY, JJ.


OPINION OF THE COURT BY HIRAOKA, J.


Anthony **Bellamy** sued the **City** and County of Honolulu

and Honolulu Police Department officers Nickolas T. **Hirata**, Dylan

**Torres**, Byron **Marfil**, and Diana A.P. **Miranda** (together, **HPD**) for

torts allegedly committed while the officers were investigating a report of a gunshot in the apartment building where Bellamy lived. The Circuit Court of the First Circuit granted summary judgment for HPD.[1] Bellamy appeals from the **Judgment.**

Bellamy's declaration opposing HPD's motion for summary judgment described what he saw and heard when the police officers came to his apartment. It directly contradicted video and audio from the officers' body-worn cameras. The United States Supreme Court has held that a plaintiff's declaration, shown by video evidence to not possibly be true, does not create a genuine issue of material fact to defeat a defendant's motion for summary judgment. But under current Hawai'i law,[2] the weight of all the evidence — which would include body-worn camera footage — and the credibility of the witnesses must be evaluated by the trier of fact, in this case a jury. We vacate the Judgment in part and remand for further proceedings.

## I. BACKGROUND

Bellamy sued HPD on November 15, 2021, and demanded a jury trial. His complaint alleged he was asleep in his apartment on May 8, 2021, when police officers "knocked on his apartment door with rifle and guns drawn at approximately 3:00 a.m. - 3:40 a.m. in the morning." He answered the door. The officers "burst in and pointed a rifle and gun and their flashlights at

---

[1]     The Honorable Kevin T. Morikone presided.

[2]     Nozawa v. Operating Engineers Local Union No. 3, 142 Hawai'i 331, 418 P.3d 1187 (2018).

him yelling to keep his hands up and yelled 'where is the gun.'" They aimed their guns at Bellamy, telling him to keep his hands up, while one officer searched his apartment.  The officers didn't have a search warrant or probable cause to believe Bellamy had committed a crime, and no exigent circumstances justified a search of Bellamy's apartment.  No gun was found.

Bellamy's amended complaint alleged negligence, assault, invasion of privacy, intentional and negligent infliction of emotional distress, and improper search and seizure.  It prayed for general, special, and punitive damages.

HPD moved to dismiss for failure to state a claim upon which relief can be granted.  The Circuit Court dismissed Bellamy's punitive damage claim against the City, but denied the remainder of the motion.[3]

HPD moved for summary judgment under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56.  The Circuit Court entered an order granting the motion, and the Judgment for HPD and against Bellamy, on November 1, 2023.  This appeal followed.

## II. POINTS OF ERROR

Bellamy contends the Circuit Court erred by:
**(1)** granting summary judgment when there were genuine issues of material fact; **(2)** granting summary judgment when there were credibility issues; **(3)** disregarding another judge's denial of

---

[3]     The Honorable James C. McWhinnie presided.

HPD's motion to dismiss Count VI (improper search and seizure); **(4)** finding that HPD were entitled to limited, qualified, or conditional immunity; and **(5)** not continuing the motion until discovery was completed. He does not challenge the Circuit Court's dismissal of his punitive damage claim against the City.

### III. STANDARD OF REVIEW

We review a grant of summary judgment de novo. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018). Summary judgment is appropriate if the record shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Id. at 342, 418 P.3d at 1198. The moving party has the burden to introduce admissible evidence to establish the material facts, show there is no genuine issue as to any of them, and explain why it is entitled to a judgment as a matter of law. Id. A fact is material if it would establish or refute an element of a cause of action or defense. Id. We view the evidence in the light most favorable to the non-moving party. Id.

Bellamy criticizes the Circuit Court for not entering findings of fact and conclusions of law. The criticism is baseless. A trial court ruling on a motion for summary judgment does not fact-find. If a material fact is genuinely controverted, summary judgment should be denied. Uncontroverted material facts in the record need not be the subject of findings. And an appellate court reviews de novo the legal argument

presented to the trial court; there is no need for conclusions of law.

## IV. DISCUSSION

A. **Under current Hawaiʻi law, Bellamy's declaration established genuine issues of material fact that preclude summary judgment.**

Bellamy argues that summary judgment should have been denied "because there were disputed material facts involving credibility." "Disputed material facts" is not the standard. It is:

> The judgment sought shall be rendered forthwith if . . . there is no **genuine** issue as to any **material fact** and that the moving party is entitled to a judgment as a matter of law.

HRCP Rule 56(c) (emphasis added).

### 1. HPD's Evidence

HPD offered a recording of a 911 call, a declaration from each police officer, and video with audio from each officer's body-worn camera. One or more cameras was recording from the first officer's arrival at Bellamy's apartment building until after the four officers left Bellamy's apartment.

Exhibit A was a recording of a call to 911. The caller says, "I heard a really loud gunshot sound it was just a single one and I could smell gunpowder. Um, I'm not sure it sounded somewhat muffled and it sounded like it came underneath me, honestly."

Corporal Marfil activated his camera at 3:21 a.m. as he was driving to the 911-caller's building on Ala Wai Boulevard in

Waikīkī.  Corporal Marfil didn't turn his camera off until 3:36 a.m., after the officers left Bellamy's apartment.

The audio and video from the officers' cameras collectively show that Corporal Marfil is the first officer to arrive at Bellamy's building.  Officers Torres and Miranda meet him outside the secured entry door.  They are buzzed in at 3:27 a.m.  They go to the 911-caller's apartment, 2501.

Corporal Marfil and Officers Torres and Miranda enter the apartment.  The caller repeats what she told the 911 operator.  She says her window was open when she heard the gunshot.  Corporal Marfil asks her if it could have been a car backfiring.  She says she's in the Air Force and was exposed to firearms during basic training.  She demonstrates where she thinks the sound came from.

At 3:31 a.m. Officer Torres asks the 911 caller to let someone (apparently Officer Hirata) into the building.  The caller lets Officer Hirata in at 3:32 a.m.  After Officer Torres gets the caller's contact information, he tells her "we can go just check her out and then, um, we'll just document that we spoke to you and basically what you just told us."

Officer Hirata arrives in the 25th floor hallway at 3:33 a.m. while Officers Torres and Miranda are in the 911 caller's apartment.  An AR-15 rifle is slung on his shoulder.  Corporal Marfil tells him, "we go check 2401, she said mighta came from, she not sure but might be downstairs, just one shot.

She said she could smell carbon or something.  I said 'I don't know, you sure it wasn't like one backfire from Ala Wai or something?'"

Officer Hirata (who hasn't yet activated his camera) says something indistinct to Corporal Marfil, who responds, "Yeah, she heard us, but . . . I guess we can go wake 'em up, huh?"  They walk to the elevator.  Corporal Marfil, referring to Officer Hirata's rifle, says "whoo 'ass one nice one.  Which one is that, what model is that?"

Officers Torres and Miranda meet Corporal Marfil and Officer Hirata at the 25th floor elevator lobby.  Officers Torres and Miranda also admire Officer Hirata's rifle.  Corporal Marfil says, "locked and loaded, brah."[4]  They all get into the elevator.

Officer Torres briefs Officer Hirata in the elevator. He says the 911 caller said she's in the military, knows the sound of gunfire, "and not only that, she knows the smell, too." The four officers arrive on the 24th floor.  They go to apartment 2401.

Officer Hirata knocks on apartment 2401's door at 3:34:52 a.m.  He announces, "HPD police.  Checking if everything okay."  He holds his AR-15 rifle in the "low ready" position — the stock is near his shoulder, the barrel pointed at the ground. Officer Torres stands behind him, his weapon holstered.  Corporal

---

[4]     Bellamy argues that Corporal Marfil's comment evidences the police officers' "intentional or reckless" conduct.

Marfil and Officer Miranda are further behind, in the hallway to Bellamy's apartment.  Their weapons are also holstered.

Officer Hirata's declaration states that Bellamy "opened the door with one hand and kept the other out of sight." The videos show Bellamy cracking the door open and waving a hand. Officer Hirata asks Bellamy to see his other hand twice before he shows it, with the door still just cracked.  After Bellamy shows both of his hands are empty, Officer Hirata removes his hands from his rifle, which then hangs from the strap on his shoulder, barrel facing the ground.  Officer Hirata never raises his rifle. He never raises his voice.

Officer Hirata explains to Bellamy that his upstairs neighbor heard "a loud bang and it sounded like gunfire," and asks Bellamy if he heard anything.

Bellamy says, "you can come check everything in here, there's nothing in here."  The video shows Bellamy opening the door for the officers.  Officers Hirata and Torres enter Bellamy's apartment at 3:35:56 a.m. and search the living room using flashlights.  They enter no other room.

Corporal Marfil is heard in the hall asking, "Are you okay?"

Bellamy responds, "No, not now."[5]

Officer Hirata asks Bellamy, "So you were sound asleep?"

Bellamy says, "I was."

---

[5]     Bellamy argued his statement showed he "felt intimidated, coerced[,] and threatened" by the officers' alleged conduct.

Officer Hirata apologizes, "Oh sheez, sorry to disturb you, cause I guess yeah one of your neighbors heard a bang and they thought it was gunfire coming from downstairs. Okay, sorry for disturbing your night."

As Officer Hirata speaks with Bellamy, a young Asian woman opens the door of apartment 2402 across the hall, looking sleepy. Corporal Marfil says, "police, hi, just making sure everything is okay. Someone said they heard a loud pop or a bang, so we just making sure. Did you hear anything?"

The woman says, "No. Do you need anything?"

Corporal Marfil responds, "Just making sure everything okay. You okay?" As he says this, Officers Hirata and Torres are leaving Bellamy's apartment at 3:36:31 a.m., less than a minute after they entered. Officer Hirata never pointed his rifle at Bellamy. None of the officers unholstered their service pistols.

On the way to the elevator, Officer Hirata says to the others, "Maybe one more floor down?"

Officer Miranda asks, "Is it reasonable to wake up 2301 too and everybody?" She answers her own question, "No."

Officer Torres says, "Odds are the people are in deep sleep so they're not gonna recall hearing it." The time was then 3:37 a.m.

### 2. Bellamy's Evidence

Bellamy submitted a declaration opposing the motion for summary judgment. He stated he is African American and a retired

United Airlines flight attendant.[6]  He was asleep in his apartment when he heard a loud knocking on his door at 3:40 a.m. He got out of bed.  "When I opened the locked door, I saw an AR automatic rifle pointed right at me and a police officer shouting at me.  I was extremely shocked and surprised and disoriented since I just woke up."

Bellamy stated:  "At least two officers told me to put my hands up.  I put one of my hands up and the officers demanded I put both hands up.  I had to open the door to show both my hands.  The officers kept asking me 'where's the guns, where's the guns'. . . . I did not consent for them to enter my apartment.  I felt threatened when they pointed weapons at me and felt I had no option but to let them into my apartment."

Bellamy stated, "I was in shock that this happened to me.  Just a few months earlier Breanna [sic] Taylor was killed in her own house and shot by police officers while she slept. . . . I was also very aware of what happened to many African American men on the mainland who have been killed by police officers and who have been unarmed. . . . I suffered sleeplessness, nightmares, anxiety, paranoia, depression and post traumatic [sic] stress disorder."

Bellamy also stated: "While I was at the door my neighbor who is Asian American opened her door to ask what was going on.  The four (4) police officers told her they were investigating gun shots and did not point any rifle at her or

---

[6]     The record contains no evidence the police officers knew who occupied apartment 2401 before Bellamy answered the door that night.

guns at her.  They did not ask to enter her apartment.  They told her to go back to bed."

### 3.  Analysis

HPD argued, "No reasonable juror could rule in [Bellamy]'s favor, given not just the officers' declarations, but the consistent and clear video evidence showing that what [Bellamy] attested to is false."  HPD cite cases from other jurisdictions for the proposition that a declaration directly contradicted by video footage cannot create a genuine issue of material fact to defeat a motion for summary judgment.

For example, in Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), a deputy sheriff (Scott) ended a high-speed pursuit by pushing the rear of Harris's car with the front bumper of his patrol car.  Harris lost control of his car, which left the roadway, ran down an embankment, and overturned.  Harris was rendered a quadriplegic.  He sued Scott in federal court for violating his constitutional right against unreasonable seizure.

Scott moved for summary judgment based on qualified immunity.  The district court denied the motion.  The court of appeals affirmed.  Quoting the court of appeals, the Supreme Court summarized Harris's opposition:

> Taking the facts from the non-movant's viewpoint, [Harris] remained in control of his vehicle, slowed for turns and intersections, and typically used his indicators for turns.  He did not run any motorists off the road.  Nor was he a threat to pedestrians in the shopping center parking lot, which was free from pedestrian and vehicular traffic as the center was closed.  Significantly, by the time the parties were back on the highway and Scott rammed

> [Harris], the motorway had been cleared of motorists and pedestrians allegedly because of police blockades of the nearby intersections.

Id., 550 U.S. at 379 (brackets omitted).

The Supreme Court then stated:

> The videotape tells quite a different story. There we see [Harris]'s vehicle racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast. We see it swerve around more than a dozen other cars, cross the double-yellow line, and force cars traveling in both directions to their respective shoulders to avoid being hit. We see it run multiple red lights and travel for considerable periods of time in the occasional center left-turn-only lane, chased by numerous police cars forced to engage in the same hazardous maneuvers just to keep up. Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury.

Id. at 379-80 (footnote omitted).

After acknowledging that the facts must be viewed in the light most favorable to the non-moving party, the Supreme Court concluded:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether [Harris] was driving in such fashion as to endanger human life. [Harris]'s version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; ***it should have viewed the facts in the light depicted by the videotape***.

Id. at 380-81 (emphasis added).

Scott is not binding on us. Nozawa is. There, Nozawa worked for Operating Engineers Local Union No. 3 (**Local 3**). Local 3 terminated her employment "due to a reorganization and

restructuring of the Hawaii district office operations[.]" 142 Hawaiʻi at 334, 418 P.3d at 1190. Nozawa sued Local 3 for gender discrimination. Her complaint alleged that she was "suddenly and without cause terminated from her position as dispatcher . . . and immediately replaced with a male dispatcher who received a pay raise and an increase in work hours[.]" Id.

Local 3 moved for summary judgment. The motion was supported by evidence including a warning letter telling Nozawa "you continue to make numerous mistakes in the discharge of your duties as Dispatcher." Nozawa, 142 Hawaiʻi at 334, 418 P.3d at 1190. A declaration stated that Local 3 "engaged in an effort to train Nozawa but she continuously failed to fully comprehend the dispatching rules and procedures." Id. at 335, 418 P.3d at 1191.

Another declaration stated that the person who replaced Nozawa (**Gentzler**) was a Local 3 organizer who was going to be displaced from that job. Gentzler "performed the role of dispatcher when Nozawa was absent" and "had extensive experience with the [union's Job Placement Regulations] and the collective bargaining agreement and had not received any written warnings for deficient work performance." Id. at 334, 335, 418 P.3d at 1190, 1191. It also explained that the increase in work hours for Gentzler "was based on a preexisting plan to return dispatchers to the forty-five-hour week, as well as the lack of a backup dispatcher." Id. at 335, 418 P.3d at 1191. Local 3 argued there were "legitimate, nondiscriminatory reasons for Nozawa's termination." Id.

In opposition, Nozawa's declaration stated she was falsely accused of making an error; her supervisor never informed her of any performance problems; she signed the warning letter but disputed making a mistake; she had always received excellent employment evaluations; she did not have performance problems; she was fully capable of performing her job; she was terminated without cause; and Gentzler had little experience as a dispatcher but when he replaced her, his work hours and pay increased. Id. at 335, 418 P.3d at 1191.

The circuit court rejected Nozawa's declaration, finding it did not satisfy HRCP Rule 56(e)[7] because it was "uncorroborated, self-serving, and conclusory." Nozawa, 142 Hawaiʻi at 338, 418 P.3d at 1194. The circuit court granted Local 3's motion for summary judgment. Nozawa appealed. We affirmed. Nozawa v. Operating Engineers Local Union No. 3, No. CAAP-14-0000021, 2017 WL 2670800 (Haw. App. June 21, 2017) (mem. op.), rev'd, 142 Hawaiʻi 331, 418 P.3d 1187 (2018).

On certiorari, the supreme court held that "HRCP Rule 56(e) does not preclude an affidavit from being self-serving." Nozawa, 142 Hawaiʻi at 339, 418 P.3d at 1195.

> HRCP Rule 56(e) provides that affidavits shall set forth facts based on personal knowledge. Thus, an affidavit by its nature includes an affiant's own perception of the matter. See Commentary to Hawaii Rules of Evidence (HRE) Rule 602 (1993) ("'Personal knowledge,' for purposes of [HRE

---

[7] HRCP Rule 56(e) provides, in relevant part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

> Rule 602], means that the witness perceived the event about which [the witness] testifies and that [the witness] has a present recollection of that perception.").

Id. at 338, 418 P.3d at 1194.

The supreme court also held that statements in an affidavit need not be corroborated. Id. at 339, 418 P.3d at 1195. "Indeed, a requirement that an affidavit be corroborated would establish a higher standard for admissibility than that required for the introduction of evidence at trial." Id.

Here, Bellamy's declaration was based on personal knowledge. He says he "saw an AR automatic rifle pointed right at me and [heard] a police officer shouting at me" when he opened his door; "two officers told me to put my hands up" and "kept asking me 'where's the guns, where's the guns'"; and "I did not consent for them to enter my apartment." These were his perceptions. His declaration satisfied HRCP Rule 56(e).

HPD argue that Bellamy's statements are "directly contradicted by the video evidence" and "at no time has [Bellamy] suggested that there are any specific facts outside of what is captured in the video that are pertinent to the alleged 'pointing' of guns, shouting, and/or 'consent' or lack thereof by [Bellamy]." But Bellamy's statements need not be corroborated to defeat HPD's motion for summary judgment. Nozawa, 142 Hawaiʻi at 339, 418 P.3d at 1195.

HPD also argue that Bellamy's declaration is conclusory and "in no way supported by underlying specific facts in the record." An assertion in a declaration expressing an inference

without setting forth the facts on which the inference is based, or stating a conclusion that is not reasonably drawn from the facts, is considered conclusory and cannot be used against a motion for summary judgment. Nozawa, 142 Hawaiʻi at 339, 418 P.3d at 1195. But an inference "based on stated facts from which the conclusion may reasonably be drawn is not conclusory and may be used to support or oppose a motion for summary judgment." Id.

Bellamy's statements that he saw an AR-15 pointed directly at him, two officers shouted to put his hands up and kept asking "where's the guns, where's the guns," and he didn't consent to the police entering his apartment, were factual, not conclusory. The jury must decide which version of events it believes; it is not for a judge, on a motion for summary judgment, to weigh competing evidence and determine which version of events should be accepted as true. See Mehau v. Gannett Pac. Corp., 66 Haw. 133, 145, 658 P.2d 312, 321 (1983) ("The question to be resolved at summary judgment is whether plaintiff's proof is sufficient such that a reasonable jury could find malice with convincing clarity, *and not whether the trial judge is convinced of the existence of actual malice*."); Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (noting it "is the province of the trier of fact" to pass on the credibility of witnesses and the weight of the evidence).

This is so even when the opposing declaration "is blatantly contradicted[,]" Scott, 550 U.S. at 380, by video evidence supporting the motion. This would not be the only case

16

where Hawaiʻi has not followed Supreme Court decisions on parallel rules of civil procedure. See Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 257, 428 P.3d 761, 769 (2018) (rejecting "plausibility" pleading standard under Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) for HRCP Rule 12(b)(6) motions to dismiss), overruled on other grounds, Wilmington Sav. Fund Soc'y, FSB v. Domingo, 155 Hawaiʻi 1, 556 P.3d 347 (2024).

HPD also cites Jenkins v. Liberty Newspapers Ltd., 89 Hawaiʻi 254, 971 P.2d 1089 (1999), for the proposition that a defendant's motion for summary judgment should be granted "where no reasonable juror could rule in plaintiff's favor." In that case Liberty, doing business as the Honolulu Star-Bulletin, incorrectly named Maui lawyer Brian Jenkins instead of Brian's father, Bill, in an article about the state insurance commissioner's seizure of an insurance agency run by Brian's parents. Brian sued Liberty for defamation.

Liberty moved for summary judgment, arguing it did not act with "actual malice." Its reporter signed a declaration explaining how the mistake happened. Brian does not appear to have submitted a declaration controverting the reporter's testimony. Brian instead argued the evidence showed actual malice by the Star-Bulletin. The supreme court affirmed the summary judgment, but not because no reasonable juror could believe Brian's evidence. Rather, it held that the evidence did

not show actual malice as a matter of law.  Id. at 258-65, 971 P.2d at 1093-100.  Brian's defamation claim would not go to the jury.  That was why no reasonable juror could have ruled in Brian's favor on that issue.

We hold that Bellamy's declaration created genuine issues of material fact about HPD's potential tort liability for the police officers' alleged actions on May 8, 2021.  The Circuit Court erred by granting HPD's motion for summary judgment.

**B.    HPD did not argue they were entitled to qualified *immunity*; there is a genuine issue of material fact about whether qualified *privilege* applies.**

HPD's motion for summary judgment argued that the doctrine of qualified *privilege* applied because there was no "clear and convincing evidence" that the police officers were "motivated by malice and not by an otherwise proper purpose." HPD relied on Medeiros v. Kondo, 55 Haw. 499, 522 P.2d 1269 (1974).

Bellamy argued there was sufficient evidence of malice to submit the issue to the jury, citing Runnels v. Okamoto, 56 Haw. 1, 5, 525 P.2d 1125, 1129 (1974) ("The existence or absence of malice is generally a question for the jury.").

The audio and video from the body-worn cameras do not appear to show any of the police officers acting with malice — in general, or directed at Bellamy.  But Bellamy's declaration, viewed in the light most favorable to him, is evidence of malice by the officers and creates a genuine issue of material fact.

For the reasons explained above, Bellamy's argument that summary judgment should not have been granted has merit under <u>Nozawa</u>.

HPD's answers to Bellamy's complaint also asserted the affirmative defense of qualified *immunity*, but HPD's motion for summary judgment did not argue that defense. The record does not show that the Circuit Court's decision to grant summary judgment was based on the doctrine of qualified immunity. We express no opinion about whether summary judgment would be appropriate as to that affirmative defense.

We need not reach Bellamy's other points of error.

**V. CONCLUSION**

The Circuit Court's *Judgment*, entered on November 1, 2023, is vacated in part; the dismissal of Bellamy's punitive damage claim against the City and County of Honolulu is affirmed. This case is remanded for further proceedings not inconsistent with this opinion.

<table>
<tr><td></td><td>/s/ Keith K. Hiraoka</td></tr>
<tr><td>On the briefs:</td><td>Presiding Judge</td></tr>
<tr><td></td><td></td></tr>
<tr><td>Daphne E. Barbee,</td><td>/s/ Sonja M.P. McCullen</td></tr>
<tr><td>for Plaintiff-Appellant.</td><td>Associate Judge</td></tr>
<tr><td></td><td></td></tr>
<tr><td>Nicolette Winter,</td><td>/s/ Kimberly T. Guidry</td></tr>
<tr><td>Sheena M. Crail,</td><td>Associate Judge</td></tr>
<tr><td>Deputies Corporation Counsel,</td><td></td></tr>
<tr><td>City and County of Honolulu,</td><td></td></tr>
<tr><td>for Defendants-Appellees.</td><td></td></tr>
</table>